Nikia Ann WAGNER (Schulte), Plaintiff-Respondent,

v.

Tom Marshall WAGNER, Defendant-Appellant.

No. 25428.

Kansas City Court of Appeals, Missouri.

Feb. 1, 1971.

Rehearing Denied April 5, 1971.

Louis Wagner, Kansas City, for defendant-appellant.

Hendren & Andrae by Henry Andrae, Jefferson City, for plaintiff-respondent.

CROSS, Judge.

On March 7, 1969, plaintiff was awarded a decree of divorce from defendant, on the ground of alleged indignities. Additionally she was granted custody of the one minor child of the parties, a boy, Robert Benjamin Wagner, "subject to rights of defendant to reasonable visitation", and awarded child support in the sum of $200.00 per month.

On October 2, 1969, defendant filed a "Motion to Modify as to Child Support" alleging that the award of $200.00 per month was unreasonable, unnecessary, and beyond his ability to pay; and, further, that plaintiff has denied him the reasonable rights to visit his child as allowed by the court. The motion prayed reduction of child support to $75.00 per month and specifically defined visitation rights, to-wit: "from 10:00 A.M. on Saturday until 5:00 P.M., the following day, Sunday, of each week, and for a period of at least two weeks during the summer vacation and for such other reasonable times as the court may deem meet and proper."

Defendant's motion was heard on October 23, 1969. On December 18, 1969, the trial court sustained the motion, reduced the child support allowance to $100.00 per month, and allowed visitation as follows: "one weekend in two consecutive calendar months from 12 noon Saturday to 6:00 p. m. Sunday on 48 hours advance notice to plaintiff; right to take child to residence of defendant or to residence of paternal grandparents; for additional period of one

week between June 1 and August 31; and for additional period of three days between December 18 and December 31, except that such three-day period shall not include December 24, 25 or 26." Additionally, the court allowed plaintiff $150.00 for her attorney's fee. Only defendant has appealed from the modifying judgment.

Two questions are presented for decision in this review. Defendant contends that the trial court abused its discretion (1) by unduly restricting his reasonable rights of visitation with his child and (2) by entering the modified order requiring defendant to pay child support in an amount ($100.00 per month) in excess both of the child's needs and defendant's ability to pay. Defendant also complains of the allowance of $150.00 to plaintiff as her attorney's fee, on the ground that no written or oral request or motion was made for it. However, since plaintiff formally declares she has no desire to assert the validity of such allowance, we take no notice of the latter complaint.

Although plaintiff has not appealed from the judgment, she attempts to charge the trial court with error in modifying the decree as to defendant's visitation privileges on grounds that no substantial changed conditions subsequent to the original decree were shown, and that there was no showing the child's welfare required the modification. Plaintiff is satisfied with and urges our affirmance of the modified $100.00 child support award. It is a well recognized rule, and has been held frequently by Missouri courts, that when only one party appeals from the judgment, review is limited to contentions made by him, and allegations of error raised by respondent will not be considered. State ex rel. Caruthers v. Little River Drainage District, 271 Mo. 429, 196 S.W. 115, and numerous other cases digested in 3 Mo. Digest, Appeal and Error, ⇒878. The rule is equally applicable to equity cases as well as law actions. In re Carlin's Estate, 226 Mo.App. 622, 47 S.W.2d 213; Junge v. Junge, Mo.App., 211 S.W.2d 733 (suit for

separate maintenance). Consequently, plaintiff will not be heard to complain against the modification of visitation privileges as ordered by the trial court, but is entitled to resist defendant's efforts to obtain further favorable modification by this court's decision.

At the time of the hearing on defendant's motion, he was twenty-three years of age—plaintiff, twenty-two. Their child was then several months past the age of three years. During the marriage, defendant had alternately engaged in employment and attended school. In 1966 he became stricken with Hodgkins disease, a severely disabling affliction. Thereafter, the parties and their child lived at the home of his parents for several months. Defendant has received extensive treatment as a patient at Ellis Fischell Hospital in Columbia for his malady, and, as an outpatient, still returns to that institution every three weeks for treatment. He also receives regular treatment in Kansas City.

In the fall of 1966, defendant and his family moved to Warrensburg, where they lived for a year (supported by the Wagners) and defendant attended school. In November, 1967, the family moved to Columbia, where defendant entered Ellis Fischell Hospital as a patient and plaintiff received employment at State Farm Insurance. Her income was insufficient to sustain the family of three and the "deficiency" was supplemented by financial help from the Wagners. In plaintiff's words, "Tom's parents did help us financially when either Tom nor I weren't working, or if we were."

Sometime before plaintiff filed her divorce suit, defendant's malady had subsided sufficiently for him to return to work. Prior to the divorce hearing the parties entered into a property settlement agreement, which provided, in part, that defendant pay plaintiff child support in the sum of $200.-00 per month, and that defendant would be allowed reasonable rights of visitation. Defendant was not represented when the

property settlement was made, nor, having defaulted, was he present or represented by counsel when the divorce suit was heard on March 7th, 1969.

In September, 1969, he voluntarily terminated his employment and is now attending Rockhurst College. He has no income. His schooling is financed by his father and he is living at the home of his parents. His testimony indicated he would resume employment in February, 1970, inasmuch as he testified, "I'm not going to be working until February, because I'm on a work-study plan at school where you go to school a semester and you work a semester."

At the time of the divorce plaintiff was working at Mid-Missouri Mental Health Center. In May following the divorce she married Carl Schulte, who was personnel director at her place of employment. Plaintiff, her present husband, and the child concerned now live in Jefferson City. Plaintiff is not employed but is attending school at Lincoln University. The child is left in the care of a babysitter for eight hours a day, a woman with seven children of her own, while plaintiff is at school. She pays the babysitter wages of $60.00 per month.

It is defendant's position that the conditions under which he has visited his child are not reasonably satisfactory or congenial; that misunderstandings have arisen as to the time and duration of his visits; and that plaintiff has unduly restricted the scope of his visitation. She has never permitted him to take the boy out of town or to have him overnight. Defendant is particularly distressed that she has never allowed him to take the child to the home of his parents in Kansas City, with whom he lives. Defendant testified: "I'd like to have the child overnight on occasions * * * (W)hen I was living in Columbia, I wasn't permitted to have him overnight. And this was 30 miles from Jefferson City where they live. Now I'm living in Kansas City and I have no place where I could stay in Jefferson City unless it would be a motel so I'm requesting that I be allowed to keep him overnight and to drive into Kansas City for this purpose and he would be staying at my parents' home where I'm staying now. * * * I want to be an equal parent to my child as my wife is now. She may have custody of him, which I don't object to, but I want him to love me as much as he loves her and I want him to grow up and to feel that his natural father did love him and didn't leave him because he didn't love him."

Plaintiff resisted defendant's plea for such visitation privilege for several reasons. First, she undertook to asperse defendant's habits, temperament and general morality, relying in most part upon the grounds she had asserted as entitling her to a divorce. She also denigrated defendant's affection for and treatment of the child. Her evidence on those matters was controverted by defendant. Additionally, plaintiff claims that the child should not be "exposed" to "indulgent relatives for yet awhile" and should not be subjected to the "unnecessary and dangerous highway travel" involved in the overnight visits the trial court has allowed. It ill behooves plaintiff to now disparage the influence of the boy's paternal grandparents and develop apprehension that his safety and welfare would be jeopardized by the highway travel necessary to accomplish the visits in question. Before the divorce and while the parties were still living together, plaintiff was content to leave the child in the sole care of defendant's parents regularly and often —once for a period of five days when plaintiff and defendant took a trip to California. During the year the parties lived in Warrensburg, defendant, accompanied by plaintiff and their child, drove practically every weekend (estimated by defendant at fifty times) to and from Kansas City, where they would "go out" every night and leave the child with the Wagners. While living in Columbia, defendant drove to and from Kansas City, with plaintiff and their child, practically every

month. On those occasions, the boy was again left in the care of defendant's parents for "extended periods" of time. It is apparent from the record that defendant's parents have deep affection and concern for their grandson and that they have contributed very substantially to his material needs, including most of his clothing and much of his means of subsistence. Plaintiff admits that the child "always seems content with the Wagners", but insists that "Robert is more contented with the stranger babysitter than he would be with his father and grandparents."

There is material conflict in the testimony of the parties as to the specific matters above mentioned, as well as all other determinative issues in the case. The trial court's resolution of the evidentiary conflicts was obviously in defendant's favor, inasmuch as its modifying order necessarily was based on findings that defendant's reasonable rights of visitation have not been satisfied by conditions imposed by plaintiff; that defendant was a fit person to have visitational association with his son; that the child's health, welfare or safety would not suffer detriment by travel to and visitation at defendant's home in Kansas City, of reasonable frequency and duration, or by "exposure" to defendant's parents; and, that the best interests of the child would be served by allowing such visitation with his father. This is so because "all fact issues upon which no specific findings were made (none were made in this case) shall be deemed found in accordance with the result reached. S.Ct. Rule 73.01(b), V.A.M.R." Pan American Realty Corp. v. Forest Park Manor, Inc., Mo.Sup., 431 S.W.2d 144. We must further indulge the presumption that in reaching his decision, the trial judge "considered all of the evidence, and that his findings were based solely upon the evidence adduced and that he was motivated by what he believed was best" for the child. Brooks v. Division of Children's Services, Mo.App., 411 S.W.2d 276.

It has been said many times that although an appellate court review of a court tried case is de novo, the appellate court, in resolving the inconsistencies and conflicts in oral testimony, is required to give due regard to the superior opportunity of the trial court to pass upon and judge the credibility and characteristics of witnesses. Hoffman v. Maplewood Baptist Church, Mo.App., 409 S.W.2d 247; Rule 73.01(d). Numerous cases have held that appellate courts should not lightly disturb the trial court's decision of questions pertaining to child custody and care, but should defer to it unless it conflicts with a clear preponderance of the evidence or manifests an abuse of judicial discretion. 11 Mo.Digest, Divorce, ⊶312.6(4) (5) (6). Honoring that rule in this case, and deferring to the trial court's resolution of the evidentiary conflicts, this court approves and adopts the implied findings of the trial court, above enumerated. However, we depart from the trial court's view of what constitutes *reasonable* frequency and duration of the child's visits with defendant in his home. It is the law's policy that minor children of divorced parents are entitled to the love and companionship of both parents, and that the well rounded development of a normal child demands an association with the father as well as with the mother, even if she has been awarded the child's legal custody. 27B C.J.S. Divorce § 312, p. 478.[1] In our opinion, those essential relationships between father and son would not be fostered and maintained in this case if the child's regularly specified visits with defendant be restricted to only six within an entire year. We believe that the child's interest would be better served by allowing defendant to have the child at his own place of residence for

---

1. Missouri cases so holding include: Olson v. Olson, Mo.App., 184 S.W.2d 768; Schumm v. Schumm, Mo.App., 223 S.W. 2d 122; Perr v. Perr, Mo.App., 205 S.W. 2d 909; Baer v. Baer, Mo.App., 51 S.W. 2d 873 and Fago v. Fago, Mo.App., 250 S.W.2d 837.

weekend visits once each calendar month, instead of only once every two months. We also believe that the summer visitation period of only one week during the three months of June, July and August, as allowed by the trial court, is too abbreviated, and should be enlarged to a period of two weeks each calendar year. We find no fault with the annual three day visitation period in December, as provided in the modifying order. However, in order to forestall further disagreement and contention between the parties, definite dates and hours for defendant to receive and return the child to plaintiff should be provided for in the order. This would accord with the court's admonition expressed in Perr v. Perr, Mo.App., 205 S.W.2d 909, that "Because of the generalities in the original decree (which gave defendant husband visitation privileges 'at all convenient and proper times'), defendant's motion to modify should be sustained and the provisions of the original decree modified so as to define defendant's visitation privileges specifically and beyond room for doubt." These views we have expressed will be reflected as amendments of the modifying order in our final order deciding this appeal.

█ Next, we consider defendant's complaint of the trial court's disposition of his motion to reduce the $200.00 allowance for child support. As appears hereinabove, the trial court sustained defendant's motion and reduced the allowance to $100.00 per month. It is clear from the evidence that the original award of $200.00 was not only in an amount he was unable to pay, but was also excessive for the needs of the child. Although that amount was a matter of agreement, it is apparent that defendant's acceptance of the figure was based on an exaggerated expectation and erroneous calculation of forthcoming income which was not realized. However, notwithstanding the fifty percent reduction of defendant's child support obligation to $100.00 per month, defendant insists that it be further reduced to $50.00 per month (although in his motion he prayed for reduction to $75.00 per month). There was adequate evidence before the trial court to establish that to provide the reasonable needs of the child, a monthly sum of $100.00 is necessary. As for defendant's ability to pay that amount, it is shown by his own admission that he expected to return to work in February of 1970. Based on evidence of defendant's prior earnings, his income after resumption of employment appears reasonably sufficient to afford him ability to pay the modified award. In any event, "The amount to be awarded as child support is a matter resting in the sound discretion of the trial court. That award will not be disturbed except for a manifest abuse by the court of its discretion. The only question before us is whether or not that discretion has been abused. That is the extent of our review of such matters. (citing cases)" McCann v. McCann, Mo. App., 448 S.W.2d 323. Finding no abuse of discretion by the trial court in its assessment of defendant's obligation to support his child, we decline to disturb the modified order in that respect.

█ Although plaintiff has not appealed, in fairness to the trial court we choose to comment briefly on her attempt to charge that court with error in modifying defendant's visitation privileges on the ground that "No subsequently changed conditions of substance have been shown". The relief sought by defendant and granted by the trial court (and to be supplemented by this court) is not such as falls within the well recognized and often repeated rule that a showing of a substantial change of conditions is prerequisite to modification of a general or permanent custody award. Defendant has not asked for a change in the child's custody. What he has requested of the court is a judicial declaration, in specific terms, of a subsisting right that has heretofore been recognized only in general terms.

The divorce did not extinguish defendant's right of association with his child at reasonable times and convenient places,

since a divorced parent has a natural right of access to a child which has been awarded to the other parent. Middleton v. Tozer, Mo.App., 259 S.W.2d 80, 27B C.J.S. Divorce § 312, p. 477. Quite to the contrary, the divorce decree confirmed that defendant possessed such right by subjecting plaintiff's general custody of the child to the "rights of defendant to reasonable visitation." Unfortunately, the indefinite nature of that provision gave rise to this controversy. Since plaintiff and defendant were in severe disagreement as to what privileges were encompassed by "reasonable visitation", that question became a matter for decision by the court which had jurisdiction of the parties and the subject matter of the dispute—not by plaintiff as a self-appointed arbiter. In order to invoke the court's jurisdiction and obtain a specific definition of his vested rights of "reasonable visitation" it was not necessary for defendant to allege and prove that there had been a change in circumstances or conditions affecting the parties. It was sufficient that he alleged in his motion and adduced evidence satisfactory to the court "that plaintiff has denied him the reasonable rights to visit his child as allowed by the court", and prayed for "specifically defined visitation rights". Our views of this question are in accord with and supported by Judge Bennick's opinion in Perr v. Perr, Mo.App., 205 S.W.2d 909, from which we have previously quoted.[2]

As permitted by Civil Rule 83.13(c), V.A.M.R., we amend the trial court's order so that it will allow defendant visitation privileges as follows: Defendant shall have the right to receive the child from plaintiff at her home in Jefferson City, at the hour of 12:00 noon on the second Saturday of each calendar month, and take the child to defendant's own residence, or that of the child's paternal grandparents, for purposes of visitation. Defendant shall return the child to plaintiff's home by 6:00 P.M. on each following Sunday, except that in the month of June the child shall be returned as hereinafter provided. Additionally, defendant is granted the privilege of an annual summer visitation period of approximately fifteen days under the following specific conditions: On the second Saturday in the month of June of each year, plaintiff shall have the right to receive the child from plaintiff at her home in Jefferson City, at the hour of 12:00 noon, and take the child to defendant's own residence, or that of the child's paternal grandparents, in Kansas City; defendant shall return the child to plaintiff's home by 6:00 P.M. on the third succeeding Sunday in June of each year. Defendant shall also have the right to have his child for an annual visit of approximately three days in the month of December of each year. For that purpose defendant may receive the child from plaintiff at her home in Jefferson City on the 27th day of December of each year, at the hour of 12:00 o'clock noon, and take the child to defendant's own residence, or that of the child's paternal grandparents in Kansas City; defendant shall return the child to plaintiff's home by 6:00 P.M. on the 30th day of December of each year. Other dates for visitation and hours for defendant to receive and return the child may, by agreement of the parties, be substituted for those hereinabove provided. The provisions of the order allowing plaintiff $150.00 for her attorney's fee shall be deleted.

As so amended, the judgment is affirmed.

All concur.

---

2. Supporting authority from other states includes: Peterson v. Peterson, 64 Cal. App. 631, 149 P.2d 206; Garner v. Garner, 143 Okl. 183, 288 P. 298; Harris v. Tarvin, Ark.Sup., 439 S.W.2d 653; Smith v. Smith, 258 Iowa 1315, 142 N.W.2d 421 and Miller v. Miller, 7 Ohio App. 2d 22, 218 N.E.2d 630.