**Sheryl NIEDERKORN,**
**Petitioner-Respondent,**

v.

**James NIEDERKORN,**
**Respondent-Appellant.**

No. 41067.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 28, 1981.

Irving L. Cooper, Clayton, for respondent-appellant.

Charles P. Todt and Susan M. Hammer, Clayton, for petitioner-respondent.

STEPHAN, Judge.

Appeal by husband in a dissolution of marriage proceeding. Husband contends: (1) that the trial court erred in awarding to wife the federal income tax exemption for the couple's only child; (2) that the trial

court's decree awarding temporary custody to husband was flawed in several respects; (3) that the trial court erred in ordering husband to keep his life insurance policy in full force and effect, with the child as beneficiary; (4) that the trial court erred in ordering husband to maintain medical insurance coverage on the child and in ordering wife to maintain dental insurance coverage on the child; (5) that the trial court's award to wife of $225 per month from husband for child support was excessive; (6) that the trial court's award of attorney's fees to wife was against the weight of the evidence; (7) that the trial court erred in ordering husband to pay to wife $2,000 in a lump sum. We affirm in part, reverse in part and remand for modification.

A statement of relevant facts follows. Additional facts will be introduced as needed in discussing the issues.

The parties were married on June 19, 1965. They have one daughter, Stacey, who was twelve years of age at the time of trial. The marital home is valued between $40,000 and $50,000. Wife provided the down payment for the home, in an amount between $6,000 and $8,000.

Wife's gross income from employment has been $14,000 a year, leaving her approximately $714 monthly take-home pay. Husband's gross income as a teacher has been about $15,500 per year, or $824 monthly take-home pay. In addition, husband makes extra money during the summer. The parties disagree as to the amount, but husband apparently concedes that he can make at least $1,500 extra in the summer. The parties agree that wife provided roughly fifty-two percent of the family income during the course of the entire marriage.

The parties agree that husband had a balance of $169 per month left over after expenses. At trial, a good deal of evidence was admitted concerning the amount of husband's monthly expenditures for recreation, which apparently consisted principally of golf games and wagers thereon. Husband testified that he spent $135 per month on these activities, but there is evidence in the record to support wife's contention that the actual figure was over $200 per month.

Husband and wife separated in November of 1977. Prior to that time, wife had a savings account in her own name in the amount of $4,000. Husband had a $1,500 savings account. At the time of separation, husband took $3,000 from wife's savings account. Of that $3,000, he testified that he used $1,000 to pay off family debts, an additional sum to establish a separate residence and that he kept the balance. Wife testified that living conditions were intolerable and that husband would not agree to leave the home unless wife surrendered the $3,000 in question. Wife stated that her husband's departure necessitated her purchase of a car, on which she owed $114 per month.

At the time of the hearing below, husband had two life insurance policies. One was in the amount of $5,000. The other, obtained from his employer, varied in value from year to year. Daughter Stacey was the beneficiary under both policies.

Wife prayed for custody, child support, marital property, the family residence, attorney's fees, costs and for such other orders as the court deemed just and proper. Husband admitted custody in his answer. The parties stipulated that the family residence be set off to wife.

Wife testified that Stacey had notice of the dissolution hearing. When questioned about temporary custody, wife stated that she would like a day's notice from husband and that she did not wish her daughter to be exposed to one Carolyn Meyerholz. Wife identified the party as a former student of her husband's, five or six years older than her daughter. Wife described her daughter as being angry at Carolyn Meyerholz.

The court below, with counsel and parties present, announced the appointment of a guardian ad litem for the child. The guardian was instructed to notify the child of future hearings and to interview the child regarding temporary custody, with particular attention to the child's reaction to Carolyn Meyerholz. The guardian filed a writ-

ten report eleven days before the next hearing stating that, based on his interview of the child, he believed Carolyn Meyerholz to be a disturbing influence on Stacey.

At the hearing following this report, the court entered judgment dissolving the marriage, awarding primary custody of Stacey to wife, and setting off the real property to wife, with her to assume the indebtedness thereon. The court noted that the parties waived maintenance. Husband does not appeal from these determinations nor from several other portions of the judgment.

## I. FEDERAL INCOME TAX EXEMPTION

■ Husband contends on appeal that the trial court erred in awarding to wife the federal income tax exemption for the dependent child, on the grounds that the award was against the weight of the evidence, was contrary to the provisions of the Internal Revenue Code, and was not prayed for by wife. We disagree. Wife made a general prayer for relief. A prayer is not strictly a part of the pleadings and does not bind a court of equity. A general prayer for relief permits the balancing of all the equities that are within the scope of the pleadings and the evidence. *In Re Marriage of Morriss*, 573 S.W.2d 101, 103 (Mo. App.1978); *Allen v. Allen*, 433 S.W.2d 580, 583 (Mo.App.1968); *Cannon v. Bingman*, 383 S.W.2d 169, 173 (Mo.App.1964). Missouri courts have jurisdiction over the question of which party receives the federal income tax exemption. *Roberts v. Roberts*, 553 S.W.2d 305, 307 (Mo.App.1977). In *Roberts*, the petitioner had requested such an award from the trial court but we cannot conclude that the absence of a specific request as in the case at bar takes this matter out of the court's hands. Once rightfully in possession of a case of this type, the court will not relinquish the matter without a full and complete determination of the rights and liabilities of the parties with respect to the controversy involved. *Craig v. Jo B. Gardner*, 586 S.W.2d 316, 325 (Mo.banc 1979); *Morriss*, supra, 103; *Allen*, supra, 583–584; *Cannon*, supra, 173.

■ The controversy involved here concerns the financial positions of the parties and the means by which their daughter will be supported. The federal exemption bears directly on the financial positions of the parties. An award of the tax exemption to one party is nearly identical in nature to an order that the other party pay as child support a sum equal to the value of the exemption. Such an award is therefore surely within the scope of the pleadings and evidence related to the wife's request for child support in this case.

■ The award of the exemption to wife in this case was not contrary to the provisions of the Internal Revenue Code. Under the Code, the dependent exemption is awarded to the taxpayer whose dependent receives "over half of [his] support . . . from the taxpayer . . . [if the dependent is] . . . a son or daughter of the taxpayer." 26 U.S.C.A. § 152(a). The Code contains a special rule, however, for awarding the exemption to a non-custodial parent. The award goes to a non-custodial parent if: (1) he provides at least $1,200 per year to support the child; and (2) the custodial parent does not clearly establish that she provided more than half the support. 26 U.S.C.A. § 152(e)(2).

■ In the instant case, husband provided well over the required $1,200, but we do not think the trial court erred in finding that wife clearly established that she provided more than half the child's support. Husband was ordered to pay $225 per month to support the child. Wife presented evidence at trial that she expended $220 per month on the child alone. Wife further testified that some of the "General Expenses" of $522.80 per month and of the "Other Expenses" of $169.50 per month, which she listed separately from the child's expenses in her budget submitted to the court, were attributable to the child. These expenses included "Car Operation" and "Utilities." Wife testified that she frequently used the car for purposes related to the child alone.

The trial court was free to believe wife's testimony in these matters. The trial court could reasonably have concluded from her testimony that more than $5 per month out of the "General" and "Other" expenses were attributable to the child alone. Such a conclusion would support the trial court's award of the exemption to wife under the requirements of the Internal Revenue Code, 26 U.S.C.A. § 152(e)(2). Therefore, we uphold the trial court's order on this question.

## II. THE TEMPORARY CUSTODY DECREE

The court below awarded primary custody of Stacey to wife. Regarding temporary custody, the decree reads as follows: "Reasonable rights of visitation and temporary custody upon at least 7 days' notice to petitioner and child and at no time during temporary custody will child be required to be in the presence of Carolyn Meyerholz."

■ Husband maintains that an order giving him "reasonable rights of visitation and temporary custody" is too vague to be enforceable. Husband cites for us no case holding such a decree too vague to be enforced, nor are we aware of any. On closer examination, the crux of husband's position seems to be not that the order is too vague to be enforced but that the lack of a definite visitation schedule will encourage further disagreement and contention between the parties.

It is true, as husband maintains, that this court has made a similar order more definite "to forestall further disagreement and contention between the parties." *Wagner v. Wagner*, 465 S.W.2d 655, 660 (Mo.App. 1971). But *Wagner* was a modification case, reviewed de novo (as was proper at the time), wherein there was evidence that when visitation was requested it was not allowed. In other words, the court was faced with existing disagreement and contention regarding enforcement of a "reasonable visitation" order. In the case at bar there is no evidence that the "reasonable visitation" decree will not work. There is no evidence of an existing difficulty with temporary custody. Should an actual dispute arise between the parties over enforce-ment of the decree, they may petition for modification, at which time the trial court may find evidence warranting a modification based on the reasoning in *Wagner*.

■ Husband complains of the seven-day notice requirement in the temporary custody order, on the grounds that the notice period is too long and that the type of notice is not specified. The trial court did not abuse its discretion in these areas and we rule against husband. Our review is not de novo. See *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). Wife asked for one day's notice. Husband produced no testimony regarding notice. The court was not bound by wife's request and could reasonably have found that earlier notice would foster a more orderly relationship between the parties and would be in the best interests of the child. As to the form of the notice, we find husband's complaint frivolous on this point. Husband benefits from the flexibility and liberality of the notice requirement. As phrased, the decree allows any reasonable form of notice. Husband does not suggest that he will be unable to give notice in a reasonable form. Husband does not show that wife is likely to try to frustrate his good faith attempt to give notice in a reasonable form. Should the ruling prove unsatisfactory in practice, the parties may seek to modify it. Absent a showing that it is likely to be unworkable, we will not disturb the trial court's ruling.

Husband next complains of the trial court's ruling that during temporary custody Stacey will not be "required to be in the presence of Carolyn Meyerholz." Husband advances several reasons for regarding this order as defective. Some of these reasons do not merit discussion and will receive none here. Husband's most tenable argument on this issue is that the ruling is based solely on hearsay evidence and therefore has no support in the record.

At trial, testimony of wife regarding Carolyn Meyerholz was admitted. Wife testified, when asked what she believed would be in the child's best interest regarding temporary custody, that she did not want

her daughter exposed to Carolyn Meyerholz. Wife identified this party as a former student of her husband's and as only being five or six years older than her daughter. Wife further testified that husband took daughter to his apartment and showed her Carolyn's picture and gifts that Carolyn had given him.

Wife then described daughter's reaction to this visit: she was angry, and she was upset, both on her own account and because her mother was upset. No hearsay objection was raised to any of wife's testimony described above.

Also admitted into evidence regarding the Carolyn Meyerholz question was a written report made by Stacey's guardian ad litem as authorized by the trial court. At trial, the court announced its intention to appoint a guardian ad litem and to have him interview Stacey. The court addressed the prospective guardian, who was present in court, instructing him to pay particular attention in the interview to the matter of temporary custody and whether there should be any specific orders. The court also instructed the guardian to find out "the child's reaction to an alleged female friend of the respondent" and asked for a written report after the interview.

Husband did not object to the instructions to the guardian, nor did he ask to be represented at the guardian's interview with Stacey. The guardian interviewed Stacey about a week after the hearing, and a week later his written report, in the form of a letter to the trial court, was entered into the record.

The guardian ad litem's report stated that, "Stacey ... does not appreciate the relationship between her father and one Carolyn Meyerholz ... She is quite adamant about one facet of the temporary visitation and custody arrangement and that is that she not be forced to be exposed to the person, Carolyn Meyerholz, at all."

The guardian ad litem did not furnish husband's counsel with a copy of this report. About nine days after the report was filed as part of the record, the parties appeared before the court and judgment was entered. Husband made no requests and raised no objections concerning the guardian's report prior to entry of the final decree. At no time during trial did husband produce any evidence on the issue of temporary custody in general or on the Carolyn Meyerholz question in particular. Husband did not cross-examine wife as to her testimony regarding temporary custody or regarding Carolyn Meyerholz.

One cannot cross-examine a written report. The guardian's report in this case was hearsay, since it was an unsworn ex parte written statement introduced to prove the truth of what it asserted, i. e., that Stacey was upset by Carolyn.[1] See *Mitchell v. St. Louis Argus Publishing Company*, 459 S.W.2d 1, 6 (Mo.App.1970); *Bartholomew v. Board of Zoning Adjustment*, 307 S.W.2d 730, 733 (Mo.App.1957). Nonetheless, we note that husband failed to object to the appointment of the guardian for the purposes and with the duties announced by the judge in open court.

■■■ It is well recognized that a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question. *Associated Underwriters, Inc. v. Mercantile Trust Co.*, 576 S.W.2d 343, 346 (Mo.App.1978). In particular, when evidence is received at trial without objection, the party who failed to object should not be allowed to raise the issue on review. See, e. g., *Federal Deposit Insurance Corp. v. Crismon*, 513 S.W.2d 305, 307 (Mo.1974); *J. L. W. v. D. C. W.*, 519 S.W.2d 724, 728 (Mo.Ap.1975).

■■■ Husband urges, however, that we should disregard his failure to object at

---

1. The guardian himself, however, could have taken the stand (thereby subjecting himself to cross-examination) and reported on Stacey's state of mind, under a recognized exception to the hearsay rule. See *State ex rel. State High-* *way Commission v. City of St. Louis*, 575 S.W.2d 712, 722 (Mo.App.1979). See McCormick on Evidence, § 249, at 590–591 (2nd ed. 1972).

trial and exclude the evidence under Rule 84.13(c). To do so we must conclude that admission into evidence by the trial court of the guardian ad litem's report was plain error affecting substantial rights of the complaining party. The facts of this case support no such conclusion. The trial court, prior to admission of the guardian ad litem's report, had already properly admitted testimony by wife to the effect that her daughter was angry and upset about her father's relationship with Carolyn Meyerholz and that wife believed the presence of Carolyn during husband's temporary custody to be detrimental to the best interests of the child. This testimony was not hearsay. It was not objected to at trial nor is it a subject of this appeal. The hearsay report is merely cumulative in effect: it repeats wife's contention that Stacey is upset about Carolyn and that the child's best interest would not be served by Carolyn's presence during temporary custody.

We cannot conclude that "manifest injustice" resulted to husband from admission of the hearsay report, given wife's independent testimony on matters covered in the report. See Rule 84.13(c). Husband made no attempt to cross-examine wife on this testimony, nor did he introduce evidence in an attempt to controvert wife's statements about Stacey and Carolyn. The principal reason for the exclusion of hearsay evidence in Anglo-American law is the lack of any opportunity for the adversary to cross-examine the out-of-court declarant. *State v. Hook*, 432 S.W.2d 349, 353 (Mo.1968); *Dryden v. Aitken*, 405 S.W.2d 925, 928 (Mo. 1966); *McCormick*, supra, § 245, at 583. Husband's failure to cross-examine wife on her testimony about Carolyn and temporary custody strongly suggests that his rights were not substantially prejudiced by his inability to cross-examine the guardian ad litem on his view of these matters.

In *Stroud v. Masek*, 262 S.W.2d 47, 50–51 (Mo.1953), the Missouri Supreme Court refused to exclude certain hearsay testimony where the complaining party on appeal had at trial made no objection and no motion to strike. We find *Stroud* applicable here. It is true that husband's counsel was not actu- ally present when the guardian ad litem's letter was filed with the court, nor did he receive a copy thereof. But he knew from the trial court's remarks and memorandum order at the September 12 hearing that the guardian ad litem had been appointed to investigate, inter alia, Stacey's feelings on the Carolyn Meyerholz question; he also knew that the guardian ad litem would communicate his findings to the court through a letter. The letter became part of the record in this case, and was available both to husband's original counsel and the new attorney who took over on September 26. The first attorney could have objected in advance to the proposed admission of the hearsay evidence. The second attorney could have objected and moved to strike the letter from the record. Counsel appeared to acquiesce in the procedure followed, and since husband was not substantially prejudiced, we cannot find error in the trial court's action.

Even if we were to hold that it was improper for the court to consider the guardian ad litem's letter, we would rule against appellant's challenge to the part of the temporary custody order addressing the Carolyn Meyerholz question. The erroneous admission of evidence does not require the reversal of a custody order. Rather, we are to exclude from consideration improperly admitted evidence and determine whether the remaining evidence is competent to support the order. See *In Re Marriage of Cavitt*, 564 S.W.2d 53, 56–57 (Mo.App.1978). In the case at bar, wife presented competent evidence of the effect of Carolyn Meyerholz on her daughter. Wife was qualified to give an opinion as to what would be in the best interests of her daughter. Wife's testimony tended to show that she believed it would not be in Stacey's best interests to be in Carolyn's presence. This testimony was not challenged by cross-examination, nor did husband present any rebuttal evidence on this question. We conclude that the trial court could base its order regarding Carolyn Meyerholz on wife's uncontradicted testimony.

Husband next raises a constitutional objection to the temporary custody decree. First, he appears to argue that he was deprived of his rights to normal parental contacts without due process of law, in that the temporary custody decree was based upon the guardian ad litem's interview, concerning which husband was given no notice and opportunity to be heard. We cannot agree. As noted above, the temporary custody decree was not based solely on the guardian ad litem's report. Rather, wife presented competent evidence in open court, subject to cross-examination, as to temporary custody. Husband was afforded an opportunity in open court to present his evidence on this question. He was notified at trial that the guardian ad litem would conduct the interview in question, and had ample opportunity to object or to request that he be present.

Husband in advancing this point relies heavily on *Flickinger v. Flickinger*, 494 S.W.2d 388 (Mo.App.1973). *Flickinger* stands for the general principle that a custody award must be based on evidence heard in open court in observance of the requirements of due process of law, rather than on information obtained from a private investigation. Id. at 392–393. We agree with this principle. But the facts in *Flickinger* are very different from those in the case at bar. That case involved a father's motion for change of custody. The parties stipulated that the trial court could order a juvenile officer's report and consider it as evidence in the matter. The stipulation itself was the extent of the proceeding in open court. The juvenile officer's report was examined in camera and the court entered a modification order in favor of the father. The court of appeals held that the mother had not been given an adversary hearing and that due process required one.

In the case at bar, husband suffered no such deprivation. He cannot seriously contend that he did not receive a full adversary hearing on the question of temporary custody. The parties did not engage in what the court in *Flickinger* regarded as an improper stipulation that purported to surrender their right to an adversary proceeding. A full adversary proceeding in open court was conducted, at which wife testified as to temporary custody. Husband did not give away, nor was he denied, his right to cross-examine her or to introduce his own evidence. The proceedings resulting in the temporary custody decree comported with due process requirements.

Husband next contends that the circuit court failed to comply with certain provisions of the Uniform Child Custody Jurisdiction Act, §§ 452.440–550, RSMo 1978 (UCCJA), in making its temporary custody determination. He complains that neither he nor Stacey was afforded notice and opportunity to be heard before the decree was made, in violation of § 452.455, RSMo 1978. He further contends that the trial court should have ordered Stacey to appear in court under § 452.490(1), RSMo 1978, which provided that when the court ordered a party to the proceeding to appear in court, "[i]f that party has physical custody of the child who has attained twelve years of age, the court shall order that he appear personally with the child unless that would clearly not be in the best interest of the child."

We find husband's claims in connection with the UCCJA to be without merit. Husband's claim that he had no notice and opportunity to be heard is frivolous. He appeared at trial, represented by able counsel, as a party to the lawsuit. As noted earlier, he had ample opportunity to testify on the question of custody and to cross-examine wife on this matter, yet he did neither. Equally frivolous is husband's claim that Stacey had no notice and opportunity to be heard. There is ample testimony in the record that Stacey had received notice of the proceedings and did not wish to appear. Her interest was subsequently represented by the guardian ad litem.

As to whether the trial court should have required Stacey's presence under § 452.490, RSMo 1978, we simply note the presence in the record of evidence to support a conclusion by the trial court that Stacey's appearance would not be in her

best interest. This was the opinion both of the mother and of the guardian ad litem. Husband failed before and during the proceedings below to request Stacey's presence and to contravene the suggestion that it was not in her best interest to appear. We therefore rule against husband on this issue.

### III. THE PROVISION RELATING TO LIFE INSURANCE

Husband next maintains that the trial court exceeded its jurisdiction by including in its decree certain orders concerning life insurance and medical insurance; alternatively, he argues that these orders are too vague and indefinite to be enforced.

The order regarding life insurance reads as follows:

"Respondent shall keep in full force and effect and maintain life insurance presently in effect and shall retain his daughter, Stacey Niederkorn, as beneficiary thereon."

Husband argues that Chapter 452, RSMo 1978, which governs dissolution of marriage, does not authorize such an order. He maintains that Chapter 452, and in particular § 452.340, contemplates direct payments of child support to the custodial parent and not to an insurance company. We believe, however, that the trial court acted within its discretion [see, e. g., *Roberts v. Roberts*, 553 S.W.2d 305, 306 (Mo.App.1977)] and did not exceed its statutory authority in this respect. Nor do we find that the order is too vague to be enforced for the reasons set forth in our disposition of the medical and dental insurance issues infra. However, we must reverse this part of the decree for the reason that the Missouri Supreme Court has held "that the liability of the father for the future support of his minor children terminates at his death, regardless of the fact that the obligation for such support is evidenced by a judgment." *Gardine v. Cottey*, 360 Mo. 681, 230 S.W.2d 731, 750 (1950). See also *Fower v. Fower Estate*, 448 S.W.2d 585, 587 (Mo.1970). Since the benefits of the life insurance policy are not payable prior to husband's death, a decree that it be kept in effect amounts to

an order for posthumous child support. See *Sunderwirth v. Williams*, 553 S.W.2d 889, 894–895 (Mo.App.1977). Under *Gardine* and *Fower*, such an order would be beyond the authority of the trial court.

*Gardine* and *Fower* were decided before the legislature passed the Dissolution of Marriage Act, § 452.300 et seq., RSMo 1978. Certain portions of this Act are modeled after one or more of the Uniform Acts recommended by the National Conference of the Commissioners on Uniform State Laws. See Agatstein, *The Dissolution of Marriage Law—Lurking Quirks*, 32 J.Mo. Bar 146 (April–May 1976). Section 452.370 of the Act contains provisions relating to the termination of provisions for maintenance and support. This section is nearly identical to § 316 of the Uniform Marriage and Dissolution Act.

Section 452.370 of the Missouri Dissolution of Marriage Act contains the following subsection:

"2. Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

This is identical to § 316(b) of the Uniform Act. Section 316(c) of the Uniform Act reads in pertinent part as follows:

"Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child *but not by the death of a parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked, or commuted to a lump sum payment . . .*" (Emphasis added.)

In § 452.370(3), the Missouri legislature enacted all of § 316(c) *except* the italicized portion above. The Uniform Act provides for automatic continuation of the child support obligation after the death of the supporting spouse. The Missouri Act tracks the Uniform Act in this section in all respects *but* this provision. The Missouri legislators rejected the Uniform Act's clause;

on the other hand they also failed to specify "death of a parent obligated to support the child" as a ground for automatic termination, along with "emancipation," as they easily could have done. We conclude from their abject silence on the issue that they intended the common law to prevail. See *Mack Motor Truck Corporation v. Wolfe,* 303 S.W.2d 697, 700–701 (Mo.App.1957). Moreover, the presumption exists that the legislature was aware of the *Gardine* rule, terminating the child support obligation at the supporting spouse's death, when it enacted § 452.370(3). See *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 41 (Mo. 1969); *Mack Motor Truck,* supra, at 701. We must assume that the legislature chose not to abrogate the *Gardine* rule. See *Mack Motor Truck* at 701.

For the reasons discussed above, this court recently followed *Gardine,* denying a divorced wife's claim for child support against her deceased husband's estate. *Bushell v. Schepp,* 618 S.W.2d 689, No. 42737, (Mo.App.1981). Our view that life insurance is equivalent to posthumous support therefore requires us to rule that the life insurance provision of the divorce decree in the present case is invalid.

## IV. MEDICAL AND DENTAL INSURANCE

The court below made the following order with respect to medical and dental insurance coverage:

"Respondent [husband] shall maintain medical insurance coverage on said minor child, Stacey Niederkorn. Petitioner [wife] shall maintain dental insurance of said minor child or the equivalent thereof relative to dental expenses."

Husband challenges this entire order, despite the fact that it is wife, and not he, whom the dental insurance portion burdens. He argues that such an order is beyond the jurisdiction of the trial court.

 Without question, a trial court's authority to order child support includes authority to order the supporting spouse to pay for medical attention that the child needs. See *Naeger v. Naeger,* 542 S.W.2d 344, 346 (Mo.App.1976). It is certainly, therefore, within a trial court's authority to include in the monthly child support award a figure representing the average monthly cost of medical attention for a child of that age. The payment of premiums to an insurance company provides for both average, anticipated medical needs and for the high expenses of unanticipated serious illness. The fact that payment is made to a third party rather than to the custodial spouse does not, in our view, remove this form of child support from the jurisdiction of the trial court.

 The amount referred to in the decree, however, must be definite and capable of ascertainment without external proof. *Loomstein v. Mercantile Trust N.A.,* 507 S.W.2d 669, 670–671 (Mo.App.1974); *Rodden v. Rodden,* 527 S.W.2d 41, 43 (Mo. App.1975). We question whether the quoted portion of the decree meets that standard. It may be that the phrase dental insurance "or the equivalent thereof" has reference to a specific policy indicating that such policy or one of equal cost must be paid for. The words referring to medical insurance are, however, less definite: husband "shall maintain medical insurance coverage on said minor child." This language leaves open the possibility that any medical insurance coverage will do. We accordingly direct the trial court, since it will have this case on remand for other reasons, to modify the medical and dental insurance order so that the coverage ordered is more easily ascertainable from the record.

 Husband also argues that this portion of the order is invalid because it mandates payment of the premiums to a person other than the custodial parent, i. e., an insurance company or companies. Divorce decrees often require payments by the supporting parent to third parties such as schools, camps, or health care providers. See, e. g., *Biggs v. Biggs,* 397 S.W.2d 337, 338 (Mo.App.1965). We find no merit in this argument.

## V. OTHER POINTS ON APPEAL

 As to the remaining points on appeal, we have carefully reviewed the record

and found that there is substantial evidence to support the remaining orders of the trial court; they are not against the weight of the evidence; the trial court did not erroneously declare or apply the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). With respect to the award of $225 per month child support, which husband contends is excessive, we quote from husband's own brief: "In a recent case, with facts somewhat similar to the present case, ... with [the parties'] present earnings approximating the earnings of the parties in this case, the husband was ordered to pay only $50 per week." Unable to join husband in his novel belief that there is a significant difference between $50 per week and $225 per month,[2] we cite husband's case, *Lockett v. Lockett,* 558 S.W.2d 387, 389 (Mo.App. 1977), in support of our holding that the child support award in this case was well within the discretion of the trial court.

Remanded for modification of the trial court's decree in a manner consistent with this opinion.

GUNN, P. J., and PUDLOWSKI, J., concur.

---

**2.** The average month has 30.4 days and thus 4.34 weeks. Fifty dollars a week is thus about $217 a month.