GARY W. LYNCH, J.
B.S. ("Father") and L.S. ("Mother"), husband and wife (collectively "Parents"), appeal the termination of their parental rights to four of their children-B.L.L.S., I.J.L.S., T.M.T.S., and Z.G.H.S ("the children").[1] In five points, Parents claim the trial court erred in: (1) "conducting the October 20, 2017 trial for the termination of [Parents'] parental rights in that 25 U.S.C. § 1912 required Parents to be appointed counsel[;]" (2) "not allowing [Parents] to at least appear by phone for the trial[;]" (3) "receiving into evidence medical records that [Parents] were not provided a timely opportunity to investigate[;]"
*488 (4) the trial court judge "not recusing himself from conducting the October 20, 2017 trial, in that, the trial court judge had disqualified himself from ... a case that involved these same [Parents;]" and (5) "finding that witness Tad Teehee was a qualified expert witness[.]" Finding no merit in Parents' first point and that the claims in their remaining points are not preserved for appellate review, we affirm the trial court's judgment.
Factual and Procedural Background
Because Parents do not challenge the factual basis of any ground for termination found by the trial court or the best-interest determination made by the trial court, an extensive recitation of the factual background is unnecessary to resolve the issues raised on appeal.
In October 2014, police were called to Parents' home, where Father was arrested for domestic violence. Finding that the home was unsafe and unsanitary, coupled with concerns regarding Parents' mental health and drug use, three of the children-B.L.L.S., I.J.L.S., and T.M.T.S.-were placed in the custody of the Missouri Department of Social Services, Children's Division. From October 2014 to March 2015, Parents entered into a written service agreement with the goal of reunification. During this time, Parents were provided services; however, Parents did not comply with the terms of the agreement as they both repeatedly tested positive for methamphetamine and did not complete parenting classes. In March 2015, Mother gave birth to another child, Z.G.H.S., and this child was also placed in the custody of the Children's Division.[2]
Parents entered into another written service agreement on April 16, 2015, and were offered services with the goal of reunification. Parents, however, continued to test positive for methamphetamine or refused to be tested when requested. In September 2015, the trial court intervened and assisted in the preparation of a final written service agreement in hopes of reunification. Once again, however, Parents continued to either test positive for drugs or refused requested drug tests. On December 8, 2015, the trial court entered a no-contact order until Parents submitted a negative urinalysis. Later that month, both tested positive for methamphetamine and thereafter repeatedly refused to participate in any requested drug tests. Because of this, on February 5, 2016, the case goal changed from reunification to termination of parental rights and adoption.
Throughout the proceedings after the children were taken into custody, Parents continuously refused to provide Children's Division with their home address. This refusal prevented Children's Division from inspecting and evaluating Parents' home for safety and appropriateness for reunification.
Also, the trial court from time to time throughout the proceedings appointed twelve different attorneys to represent Parents. While some of these attorneys were required to withdraw due to routine conflict checks, seven attorneys cited as reasons for withdrawal a lack of cooperation from Parents, requests made by Parents for them to withdraw, or both.
During the underlying neglect proceeding before the termination petition was filed, Parents were separately represented by successive appointed counsels. In the termination proceeding, and apparently at Parents' request following warnings about *489 the potential for conflicts of interest in joint representation, Parents were initially jointly represented by court appointed attorney, Patricia Loveland ("Loveland"). Loveland, however, was eventually asked to withdraw by Mother, after Mother revealed she was filing a bar complaint against Loveland. Father later told the trial court that Loveland was "working against us." On March 17, 2017, during a hearing for which Parents were aware the trial court had specifically ordered them to attend, but for which they did not appear, the trial court granted Loveland leave to withdraw from representing both Mother and Father.
At a hearing on March 31, 2017, Parents requested another court-appointed attorney, but this time requested separate attorneys for each. The trial court warned Parents that the court was "kind of running out of lawyers here locally" but the court would appoint two more attorneys, one for Father and one for Mother. Upon Mother's inquiry, the trial court confirmed that it was willing to appoint, at no cost to parents, an attorney of their own choosing if they found one satisfactory to them and willing to accept the appointment. Parents asked the trial court to delay appointing any attorneys for them at that time in order to give them an opportunity to find their own attorneys willing to accept an appointment. The trial court gave them until April 21, 2017, for that purpose. Additionally, the trial court warned Parents about the consequences of not cooperating with their lawyers and discussed the potential of a finding of an implied waiver of counsel or constructive waiver of counsel in the event of a failure to do so. The trial court then urged Parents to cooperate with their attorneys in good faith.
On April 21, 2017, having heard nothing from Parents about their search for an attorney, the trial court appointed attorney Jared Thomas to represent Mother and attorney Terry Neff to represent Father. Shortly after being appointed, attorney Jared Thomas filed a motion to withdraw, which the court granted on May 5, 2017.[3] The trial court then appointed attorney Dylan W. Thomas to represent Mother. Thereafter, both attorney Dylan W. Thomas and attorney Terry Neff separately filed motions to withdraw from representing their respective clients, which were all noticed for hearing at 9:00 a.m. on July 7, 2017.
While representing Mother, attorney Dylan W. Thomas filed on her behalf on June 5, 2017, a "Motion for Recusal" requesting the trial court judge to recuse "pursuant to RSMo. 472.060 due to bias." No other basis for recusal is alleged in the motion. Nothing in the record on appeal shows that this motion was ever noticed up for a hearing or otherwise brought to the attention of the trial court for a decision.
Although being duly noticed and apparently having actual notice of the July 7, 2017 hearing on counsels' motions to withdraw, neither Father nor Mother appeared. During that hearing, the trial court heard of Mother's (1) repeated refusal to meet in person with counsel, (2) repeated refusal to discuss the case on the phone with counsel without Father's participation in the call, which Mother's counsel considered to be an ethical violation for him to talk with Father who was represented by other counsel, (3) failure to disclose her residential address to counsel, (4) filing motions with the court herself without discussing the matter with counsel, *490 and (5) failure to appear at hearings on related cases. The trial court also heard about Father's (1) repeated refusal to discuss the case on the phone with his counsel without Mother's participation in the call, which Father's counsel considered to be an ethical violation for him to talk with Mother who was represented by another attorney, (2) failure to appear for any of his three scheduled appointments with counsel, (3) failure to disclose his residential address to counsel, (4) belligerence toward his attorney's staff, (5) threats to file bar complaints against his attorney, (6) filing motions with the court himself without discussing the matter with counsel, and (7) failure to appear at hearings on related cases. At the conclusion of the hearing, the trial court granted each attorney leave to withdraw and entered a written order making, among others, the following findings of fact:
[Mother] has effectively waived her right to counsel by her continuous failure to meet with court appointed counsel, by not providing a valid address as previously ordered by the Court, and continued insistence for court appointed counsel to participate [sic] in prohibited communications. Further, mother's continued failure to cooperate, absent valid justification, is an affirmative waiver of her right to counsel. Finally, mother's filing numerous pleadings on her own, without notification to or consultation with her numerous appointed counsel, shows this court that she is rejecting her current and former appointed counsel.
* * *
[Father] has effectively waived his right to counsel by his continuous failure to keep their meetings and provide a valid address as previously ordered by the Court. Further, father's continued failure to cooperate, absent valid justification, is an affirmative waiver of his right to counsel. Finally, father's filing numerous pleadings on his own, without notification to or consultation with his numerous appointed counsel, shows this court that he is rejecting his current and former appointed counsel.
Later that day, Mother contacted the court clerk's office by telephone and inquired as to the status of the attorney withdrawals. The clerk informed Mother the court had granted both attorneys leave to withdraw, advised Mother the case was set for trial on October 20, 2017, at 9:00 a.m., and requested that Mother provide an updated address.
Neither Mother nor Father appeared for the scheduled trial held on October 20, 2017. In confirming their non-appearance on the record, the trial court stated that "[t]hey've apparently called the clerk's office several times this morning," but the trial court did not mention and nothing in the record discloses the nature or subject matter of those conversations with the clerk. Two unsigned motions entitled respectively "Motion to Request Change of Judge and Continuance and Jury Trial"[4]
*491 and "Motion to Request Teleconferencing for Hearing on the 10-20-17 [sic]"[5] , purporting to be made jointly by Mother and Father, bear an "OCT 20, 2017" file stamp by the clerk. It is unclear from the record on appeal as to what time they were filed-before or after the trial-as there is no timestamp on either motion. Nevertheless, nothing in the record on appeal supports that either motion was brought to the trial court's attention in any manner before the trial concluded on that date.
Because the children were of Native American heritage, Tad Teehee ("Teehee"), an official representative of the Cherokee Nation, testified at the trial. During his testimony, the trial court found, without objection, that Teehee was a qualified expert witness for purposes of the Indian Child Welfare Act ("ICWA"). Teehee testified that the ICWA requirements had been met, and that it was his recommendation for the children not to be returned to Parents at this time.
On November 6, 2017, the trial court entered a judgment terminating Parents' parental rights to the children based on the grounds of abandonment, abuse and neglect, and failure to rectify. See sections 211.447.5(1), 211.447.5(2), and 211.447.5(3).[6] The trial court also found, in accordance with the provisions of section 211.447.7, that it was in the best interest of the children to terminate Parents' parental rights. Parents did not file any post-trial motions but timely appealed the trial court's judgment.
Standard of Review
An appellate court will affirm the trial court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and permissible inferences drawn therefrom in the light most favorable to the judgement. Suffian v. Usher , 19 S.W.3d 130, 136 (Mo. banc 2000). The trial court is granted deference on factual issues because it is in a better position to determine the credibility of the parties and witnesses. J.A.R. v. D.G.R. , 426 S.W.3d 624, 627 (Mo. banc 2014). The trial court's judgment is presumed correct. Stoller v. Stoller , 330 S.W.3d 814, 818 (Mo.App. S.D. 2011).
Discussion
Point 1-Parents Waived Right to Appointed Counsel
In Parents' first point, they claim that "the trial court erred in conducting the October 20, 2017 trial for the termination of the [Parents'] parental rights, in that 25 U.S.C. § 1912 required [Parents] to be appointed counsel."
25 U.S.C. § 1912(b) states, in relevant part, that "[i]n any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding." Similarly, section 211.462.2 provides, in relevant part: "The parent ... of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court." The record reflects that from the time the children were initially taken into custody in October 2014 until July 7, 2017, the trial court found that *492 Parents were indigent and had requested appointment of counsel. It also reflects during that period that the trial court went to extraordinary lengths to apply and comply with both of these statutes by repeatedly appointing successive attorneys for Parents.
Nowhere in Parents' brief, however, do they mention or in any way acknowledge or address the existence of the trial court's July 7, 2017 findings of fact and determinations that each of them had waived their right to appointed counsel. Parents make no claim or argument in their brief challenging in any manner either the factual or the legal basis of those waiver findings and determinations. Similarly, Parents assert no claim, argument, or citation to relevant legal authority supporting that Parents' statutory rights to appointed counsel are absolute and cannot be waived by them, and our limited ex gratia research finds no such legal authority. We cannot supply missing arguments or analysis for Parents at the risk of becoming their advocate. See White v. State , 192 S.W.3d 487, 490 (Mo.App. S.D. 2006) (it is not the appellate court's duty to become an advocate for an appellant and search the record for error).
Because Parents waived their right to appointed counsel as of July 7, 2017, the trial court did not misapply 25 U.S.C. § 1912(b) in proceeding to trial on October 20, 2017, without appointing counsel for them as provided in that law. Parents' first point is denied.
Points 2, 3, 4, and 5-Claims Not Preserved for Appellate Review
We next address Parents' four remaining points relied on, taking them out of order for ease of analysis.
Applicable Legal Principles for Preserving Claims for Appellate Review
"[N]o allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court." Section 512.160.1; see Suffian v. Usher , 19 S.W.3d 130, 135 n.14 (Mo. banc 2000) (section 512.160.1 prohibits appellate review of issue "never considered or ruled on" by trial court); Horwitz v. Horwitz , 16 S.W.3d 599, 602 (Mo.App. E.D. 2000) (citing section 512.160 to support holding that issue for which record fails to disclose evidence of an express ruling upon it by the trial court was not preserved for appellate review). " 'An issue that was never presented to or decided by the trial court is not preserved for appellate review.' " Brown v. Brown , 423 S.W.3d 784, 788 (Mo. banc 2014) (quoting State ex rel. Nixon v. Am. Tobacco Co., Inc. , 34 S.W.3d 122, 129 (Mo. banc 2000) ). As required by Rule 78.09, the trial court must be given the opportunity to rule on a question. Brown , 423 S.W.3d at 787. Adherence to this rule assists in resolving any alleged error at the earliest possible opportunity by "allowing the trial court to rule intelligently." Id. at 787-88. It is a critical component in the efficient and timely resolution of disputes and the conservation of the parties' and the courts' limited resources. Id. at 788.
Failure to make known to the court an objection to the action of the court and grounds therefor will constitute a waiver of that objection on appeal. Mayes v. St. Luke's Hosp. of Kansas City , 430 S.W.3d 260, 267 (Mo. banc 2014) (citing Pollard v. Whitener , 965 S.W.2d 281, 291 (Mo.App. W.D. 1998), and Niederkorn v. Niederkorn , 616 S.W.2d 529, 535 (Mo.App. E.D. 1981) ). A properly preserved objection will identify the law with respect to the particular legal claim, provide *493 citation to authority, and apply that law to the facts of the case. Mayes , 430 S.W.3d at 270.
"Motions before a trial court are not self-executing and it is the obligation of the party who files the motion to notice it up for a hearing or otherwise bring it to the trial court's attention." State v. Celis - Garcia , 420 S.W.3d 723, 726 (Mo.App. W.D. 2014). A trial court cannot be faulted for not taking action it was never asked to take. Id. (internal citations and quotations omitted). "It is incumbent upon one seeking relief to ensure that the trial court rules upon all requests before it in order to preserve an erroneous ruling for appeal." Rolla 31 Sch. Dist. v. State , 837 S.W.2d 1, 7 (Mo. banc 1992) (citing section 512.160).
Rule 84.04(e) requires that for each claim of error, the argument in an appellant's brief under the point relied on asserting that claim "shall also include a concise statement describing whether the error was preserved for appellate review" and "if so, how it was preserved[.]"
Point 2
Parents' second point claims "the trial court erred in conducting the October 20, 2017 trial for the termination of the [Parents'] parental rights, in that the court did not allow [Parents] to at least appear by phone for the trial in accordance with 25 CFR § 23.133 [.]"
Parents' argument under this point contains no statement describing whether the asserted error was preserved for appellate review or how it was so preserved, as required by Rule 84.04(e). The entire argument contains only two references to the record on appeal-the trial court's statement in the transcript that Parents "apparently called the clerk's office several times this morning" and Parents' "Motion to Request Teleconferencing for Hearing on the 10-20-17 [sic]" contained in the legal file. Parents fail to demonstrate and, from our ex gratia review, nothing in the record supports that the contents of either were timely brought to the attention of the trial court for a decision, see Celis - Garcia , 420 S.W.3d at 726, or that either asserted a claim of a purported right under 25 CFR § 23.133 to participate in the trial by telephone conference, see Brown , 423 S.W.3d at 788.
Because Parents fail to demonstrate and the record does not support that the claim of error asserted in their second point was preserved for appellate review, the point is denied.
Point 4
Parents' fourth point claims "the trial judge erred in not recusing himself from conducting the October 20, 2017 trial, in that, the trial court judge has disqualified himself from Newton County case 17NW-JU00038 on May 5, 2017, a case that involved these same [Parents]."
Parents' argument under this point contains no statement describing whether the asserted error was preserved for appellate review or how it was so preserved, as required by Rule 84.04(e). The entire argument contains only one reference to the record on appeal-the "Motion for Recusal" filed in the court clerk's office on June 5, 2017.[7] Parents fail to demonstrate and, *494 from our ex gratia review, nothing in the record supports that either this motion or the unmentioned Motion for Request of Change of Judge filed by Parents on October 20, 2017, was timely brought to the attention of the trial court for a decision, see Celis - Garcia , 420 S.W.3d at 726, or asserted a claim for recusal on the basis that the trial court judge had disqualified in the Newton County case, see Brown , 423 S.W.3d at 788.
Because Parents fail to demonstrate and the record does not support that the claim of error asserted in their fourth point was preserved for appellate review, the point is denied.
Points 3 and 5
In Parents' third and fifth points, they claim, respectively: "the trial court erred by receiving into evidence medical records that [Parents] were not provided a timely opportunity to investigate in accordance with 25 C.F.R. § 23.134 [;]" and "the trial court erred in finding that witness Tad Teehee was a qualified expert witness in accordance with 25 C.F.R. § 23.122."
Under neither point does Parents' argument contain a statement describing whether the asserted error was preserved for appellate review or how it was so preserved, as required by Rule 84.04(e). Our ex gratia review of the record reveals that Parents made no objection during the trial when the Children's Division sought to (1) introduce both Father and Mother's medical records into evidence or (2) have the trial court recognize Teehee as a qualified expert witness. "To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced[.]" Harrell v. Cochran , 233 S.W.3d 254, 259 (Mo.App. W.D. 2007). Otherwise, admissibility claims are waived on appeal. See Mayes , 430 S.W.3d at 267.
Because Parents fail to demonstrate and the record does not support that the claims of error asserted in their third and fifth points were preserved for appellate review, the points are denied.
Decision
The trial court's judgment is affirmed.
DON E. BURRELL, JR., P.J.-concurs
NANCY STEFFEN RAHMEYER, J.-concurs

SD35242, SD35243, SD35244, and SD35245 have been consolidated for all purposes on appeal.

Later, another sibling-C.S.-came into care in 2017, however, this child is not a subject of these proceedings.

The motion to withdraw and the order granting the motion were not included by Parents in the record on appeal.

The substantive portion of this motion verbatim states, except for bracketed substitutions used for clarity:
Comes now, [Father] and [Mother], to request the right to have a jury trial for these cases. We also request to have a jury trial for these cases. We also request to have this judge recuse himself and a different judge be appointed to these cases. The parents have filed a complaint with the Commission on Retirement Removal and Discipline, and have also filed a civil lawsuit against the judge in federal court. This creates a bias situation and previously there was a bias situation between [Parents] and the judged as well. Pursuant to Missouri Rule 51.05 we request for the judge to recuse himself based on bias our statement of our belief of bias between ourselves and [trial court judge]. We have previously requested this as well.

The substantive portion of this motion verbatim states, except for bracketed substitutions used for clarity, "Comes now, [Father] and [Mother], to request the right to be able to attend the hearing on 10-20-17 by telephone."

Unless otherwise indicated, all statutory references are to RSMo 2016.

We make four observations about Parents' argument under this point. First, the reference to the Motion for Recusal is by description only without any citation to the record as required by Rule 84.04(e). Second, the argument asserts the Motion for Recusal was filed on behalf of both Mother and Father, while the record clearly shows that it was filed by Mother's then court-appointed attorney expressly on behalf of only Mother. Third, none of Parents' factual assertions about the Newton County case are supported by citation to the record as required by Rule 84.04(e). In addition, none of Parents' factual assertions about the Newton County case in their statement of facts are supported by citation to the record as required by Rule 84.04(c). Fourth, Parents' cite no legal authority supporting their claim of error or provide any explanation for the absence of such authority. See Rodieck v. Rodieck , 265 S.W.3d 377, 385 (Mo.App. W.D. 2008) (Appellant is obligated to cite appropriate and available precedent or provide an explanation for the absence of such citations).