Forest Leroy **FLICKINGER**, Plaintiff-Respondent,

v.

Paula Jean **FLICKINGER**, Defendant-Appellant.

No. KCD 26157.

Missouri Court of Appeals, Kansas City District.

April 2, 1973.

Motion for Rehearing and/or Transfer Denied May 7, 1973.

Application to Transfer Denied June 11, 1973.

Scott O. Wright, Brown, Wright & Willbrand, Columbia, for defendant-appellant.

Marion E. Lamb, Moberly, for plaintiff-respondent.

Before SWOFFORD, P. J., and SHANGLER, and WASSERSTROM, JJ.

SWOFFORD, Judge.

This appeal involves the custody of the two minor children of the parties and the procedures in the court below, wherein the custody of these children was changed from the mother-appellant to the father-respondent. These children are a son, now 9 years of age, and a daughter, now 6 years of age. We have concluded that this order of change of custody was improperly entered and that this matter must be remanded for a full hearing on the father-respondent's Motion for Change of Custody.

The sequence of the events leading to this appeal is that the father-respondent filed suit for divorce in Randolph County, Missouri, against the mother-appellant, and the court below on April 30, 1968 entered a decree of divorce in his favor but awarded the custody of the two children to the mother with appropriate orders with reference to child support and visitation. No appeal was taken from the judgment and it, therefore, is a final judgment in divorce.

On or about January 6, 1970, the father-respondent filed his motion for change of custody, in which he asked that the custody of the children be awarded to him.

No action was taken on this motion until April 7, 1971, when the parties appeared in the court below, the father in person and by his attorney, Marion E. Lamb, and the mother in person and by her then attorney, C. M. Hulen, Jr. At that time, the parties through their attorneys, in open court and on the record, entered into an oral stipulation, the pertinent portions of which were stated as follows:

"MR. LAMB: And it is further stipulated that it is the desire of the parties to settle this matter in as practical manner as possible. It is therefore agreed and stipulated between the parties hereto that they respectfully request the Judge of the Circuit Court to order the Juvenile Officer of Randolph County, Missouri to make an investigation of the home of the plaintiff and the home of the defendant.

MR. HULEN: And the home of William Young, the maternal grandparents with whom the children have resided for a substantial period of time.

I think we should say we agree to accept as true the findings reported by the Juvenile Officer to this court.

It is further stipulated that the report made by the Randolph County Juvenile Officer may be considered by the Court as evidence in this matter.

THE COURT: I am going to order the Juvenile Officer of this county to make an investigation of the respective homes involved and to make a report to this court on the suitability of the three homes for possible placement of the children—the custody of the children."

Neither party testified and no evidence was heard. The stipulation of counsel comprised the whole proceeding, at that time.

On April 9, 1971, the court below entered an order requesting the Juvenile Officer of Randolph County, Albert J. Smith, "to make investigation and report on suitability of parties with reference to custody".

On May 5, 1971, the said Albert J. Smith filed a 5½ page document entitled "Report to Court". This report is replete with hearsay statements and conclusions and other so-called "facts" which, if presented as evidence before the court, would be subject to objection. Two examples are sufficient to characterize the nature of this report:

The father-respondent is apparently the only source of some information stated as facts, and the male child (who at that time was 7½ years of age) is quoted extensively as to the conditions existing in the home. There is very little information in the report which could conceivably rise to the dignity of competent evidence.

Following the receipt of this report, the court below, *in camera,* on May 17, 1971, entered an order of modification effective June 1, 1971, awarding the custody of the two minor children to the father-respondent, and granting temporary custodial rights for a two-week period each summer to the maternal grandparents, but allowing no rights of any kind with reference to the children to the mother-appellant.

On December 8, 1971, the mother-appellant, through her present counsel, filed a motion to set aside the judgment of May 17, 1971, and thereafter and on March 1, 1972 a hearing was had upon this motion in the court below. In summary, the moth-

er-appellant offered the testimony of the official court reporter that there was no record of any proceeding or hearing in the Circuit Court on May 17, 1971, the date of the order of modification, and the testimony of the mother-appellant that while she had authorized her then counsel, Hulen, to agree that the Juvenile Officer make the investigation and she appeared in court with him on the date of the stipulation, she denied any knowledge or any agreement that the report of said Juvenile Officer would be the only evidence or the "complete evidence" in the matter. She had never been shown a copy of the report prior to the modification order, but had seen only the "Conclusions and Recommendation to the Court", comprising the last portion thereof, after the modification order had been entered.

At this hearing, the father-respondent offered the testimony of Mr. Hulen, who stated that he was authorized by his client to make the stipulation with reference to the Juvenile Officer's report, but that he had never received a copy of such report. He further stated that he had made no request of the court to examine or cross-examine the Juvenile Officer or to introduce other evidence.

On April 3, 1972, the court below overruled the mother-appellant's motion to set aside the judgment of modification of May 17, 1971, and this appeal followed.

The position of the mother-appellant is that the judgment of modification of May 17, 1971 should be set aside since it was entered without any hearing, the receipt of any evidence, without notice, or any opportunity to be heard; was based solely upon the inadmissible report of the Juvenile Officer, and was entered in an irregular and improper manner. We agree and we rule this case accordingly under the provisions of Rule 74.32, V.A.M.R.

■ Of course, the court below had and has general and continuing jurisdiction over the matter of the custody of the chil-

dren here involved. This responsibility is controlled primarily by the best interests of the children as found by the court from time to time. Such proceedings are also deeply impregnated by public interest.

■ The court awarded custody of the children to the mother in April of 1968, and could review and alter such order as changed circumstances developed upon proper application and evidence. But the proceedings for change of a custody order are not and never should be cursory or perfunctory, and courts should not only zealously protect the interests of the child, but also afford the parents an opportunity to be heard and accord them due process.

This basic principle is thus stated in 27B C.J.S. Divorce § 317(8), pp. 572–573:

"An action or issue involving the change of custody of minor children from one parent to another is a judicial proceeding, to be conducted in a strictly judicial manner, in which the decision is to be rendered by the judge only on evidence before him; so, it is error for the court to refuse to hear the witnesses offered by one of the parties on the issue of custody."

The decisional law of Missouri clearly follows and applies this general rule. In Drew v. Drew, 186 S.W.2d 858 (Mo.App. 1945), this court said, 1.c. 865:

" * * * When one seeks to exercise a trust of such importance (custody) * * * the character and fitness of the applicant should be subjected not only to a broad but to a thorough investigation, *and very clear and convincing proof* of such fitness should be offered, particularly with a view of determining the effect of any *proposed change* of custody upon the welfare of the child." (Emphasis added.)

In the recent case of Rawlings v. Taylor, 477 S.W.2d 737 (Mo.App.1972), the basic requirement of a full hearing in this type

of proceeding was once again stated and emphasized when this court said, 1.c. 740:

> "The record so clearly shows a failure to accord the appellant mother an *open, adversarial hearing, without prejudgment*, of her claim that her fitness for custody of the child had been restored that we remand it to the trial court for such an initial determination." (Emphasis added.)

A corollary of this rule equally logical and firmly established, is that where a court of competent jurisdiction has awarded the custody of children in a divorce proceeding, there must be substantial evidence of new facts and changed conditions to authorize any modification of the original decree and the burden of proof in this regard rests upon the moving party. Davis v. Davis, 192 S.W.2d 41, 43 (Mo. App.1945); Yount v. Yount, 366 S.W.2d 744, 748 (Mo.App.1963). This burden cannot be met without a regular hearing, with notice to the parties. *Ex parte* or *in camera* orders without the basic requirements of due process do not satisfy the legal requirements here expressed. State ex rel. Tatum v. Ramey, 134 Mo.App. *722, 725*, 115 S.W. 458, 459 (Mo.App.1909).

The application of these salutary rules to the case before us would compel the conclusion that their simple standards were not met since there was no hearing on the father-respondent's motion to modify and no evidentiary foundation for the order changing custody—unless the report of the Juvenile Officer may be said to rise to that dignity.

The judicial obligation in this regard cannot be delegated to non-judicial persons. We do not criticize the procedure

of requesting nor minimize the possible helpfulness of "social" or similar studies or reports in such matters, but we are firmly convinced and so hold, that such reports cannot (and should not) supplant the required judicial determination of the facts implicit in such proceedings. Such reports are intended to assist the court—not replace it.

In some states, the courts are permitted by statute to cause such independent investigations to be made in custody proceedings.[1] Even in such states, the general rule as to the use thereof is stated in 24 Am.Jur.2d, Divorce and Separation, Section 793, p. 901, as follows:

> "Nevertheless, the parties cannot be deprived of any of the usual attributes of a fair trial in open court; the award of custody must be based on evidence heard in open court in observance of requirements of due process of law, rather than on information obtained from a private investigation. Thus, the investigator who makes a report should be placed on the stand as a witness, and be subject to examination and cross examination; and statements on the stand or in his report which are hearsay should be excluded * * *. *The court cannot delegate to anyone the power to decide custody; it cannot make the report and conclusions of its investigator conclusive, even though the parties agree that the recommendation of the investigating agency shall be binding on the court;* the report is merely advisory and may be disregarded."[2] (Emphasis added.)

The briefs herein and our independent research have failed to disclose a prior de-

---

1. Article 5, Section 28, Constitution of Missouri (1945), V.A.M.S. provides that in judicial circuits of more than one judge, there shall be at least one juvenile and domestic relations division. In such circuits the investigative and social facilities of the juvenile authorities are frequently utilized in domestic relations and custody matters.

2. Rea v. Rea, 195 Or. 252, 245 P.2d 884, 35 A.L.R.2d 612 (1952); Tumbleson v. Tumbleson, 117 Ind.App. 455, 73 N.E.2d 59 (1947); Dier v. Dier, 141 Neb. 685, 4 N.W.2d 731 (1942); Wunsch v. Wunsch, 248 Wis. 29, 20 N.W.2d 545 (1945); Martinez v. Martinez, 49 N.M. 405, 165 P.2d 125 (1946); Oltmanns v. Oltmanns, 265 Minn. 377, 121 N.W.2d 779 (1963).

cision of the appellate courts of this state that deals directly and specifically with the factual situation before us. There is authority at least by implication, for the proposition that independent non-judicial investigations in certain cases may be helpful or meaningful to the court, but there is no authority that such reports are in any way controlling on the court nor relieve the court of its duty to conduct a judicial hearing. In fact, our courts have clearly indicated to the contrary.

In Benjamin v. Benjamin, 370 S.W.2d 639, 644 (Mo.App.1963), objection was made on appeal as to the admissibility of a "child study report" made by a social worker attached to the domestic relations court. The court, after pointing out that there was no statutory authority for such report in Missouri and holding that its reception in evidence could not be countenanced under the court's inherent equity powers in a custody proceeding, held that the error was waived because not properly raised in the hearing by objection to its introduction, but for the first time in appellant's motion for a new trial. The court, however, found that other evidence introduced at two hearings "warranted the judgment without regard to the report", but added, l.c. 644:

"Nevertheless, *if the record disclosed that this case had been decided on the strength of that report* we would seriously consider whether we ought not reverse it in the exercise of our discretionary powers under Rule 79.04 V.A.M.R. But the record does not warrant that conclusion." (Emphasis added.)

In H—— B—— v. R—— B——, 449 S. W.2d 890 (Mo.App.1970), an investigative report was apparently ordered by the court and made by a welfare worker but the record made no further reference to it and it was not before the court on appeal. The objection of the mother that the trial court relied on this report was disposed of on appeal in the following language, l.c. 893:

"In that state of the record we cannot convict the trial court of improperly considering the result of home studies. *But we do not wish this ruling to be considered as approving the unlimited use of such social studies and reports.*" (Emphasis added)

We adopt with enthusiasm the views of the courts in Benjamin and H—— B——, as far as they apply to the determination of the matter before us. Further, we adhere and adopt, as the present law of Missouri, the statement of principle as set forth in 24 Am.Jur.2d, Divorce and Separation, as above quoted.

This view is not diminished or weakened by the fact that counsel for the parties stipulated that the investigation of the Juvenile Officer be made and filed with the court. We cannot accept as binding on the parties the purported stipulation that all statements in such report would be considered as "true". If this stipulation were accepted as father-respondent urges, not only would the well-defined powers and obligations of the trial court be abdicated to the Juvenile Officer, but he would also be empowered to pass upon the admissibility of evidence. While we do not approve and, indeed, deplore, the stipulation that such report might be received as evidence, we hold that any reasonable interpretation in that regard should be confined to competent evidence—admissible evidence —not hearsay, gossip or improper conclusions based thereon.

The purported stipulation that all matters stated in such report by the Juvenile Officer would be considered as "true" defies judicial imagination. Such *carte blanche* agreement goes far beyond the purpose of proper trial stipulations and should not bind lay parties so as to preclude either the right of cross examination or the right to a full hearing. Carried to its logical conclusion, what would be the effect of the position of father-respondent if the Juvenile Officer had included in

his report that he had been "informed" that mother-appellant had robbed a bank, held up a filling station or—committed a murder? Would she be required to accept such statements as "true"?

 It was the duty of the court below to receive evidence and to inquire into the propriety of the stipulation as to whether the same served the best interests of the children. Wood v. Wood, 400 S.W.2d 431, 437 (Mo.App.1966).

Father-respondent raises the further point that since the mother-appellant did not file a motion for a new trial within 15 days after the entry of the modification order of May 17, 1971, this court lacks jurisdiction to hear the appeal. We reject this position, upon several grounds.

The court below retained continuing jurisdiction over the custody of the children involved during their minority, Sec. 452.-110 RSMo 1969, V.A.M.S., and could review its previous orders with reference thereto at any time. Further, as has been previously demonstrated in this decision, the court below acted without authority and in a patently irregular manner in sustaining father-respondent's motion to modify and such fatal defect, apparent upon the record, could be raised by mother-appellant at any time within 3 years, Rule 74.32; Edson v. Fahy, 330 S.W.2d 854, 858 (Mo. Sup.1960); McDaniel v. Lovelace, 439 S. W.2d 906, 910 (Mo.Sup.1969); Wenzel v. Wenzel, 283 S.W.2d 882, 885 (Mo.App. 1955).

An order purporting to rule on a motion to modify custody provisions in a divorce decree on the ground of changed conditions made without a hearing at which evidence is adduced has been held to be in excess of the court's jurisdiction, and such jurisdictional defect can be raised at any time. Foster v. Foster, 300 S.W.2d 857, 868 (Mo.App.1957).

For the reasons herein stated, the order of the court below of May 17, 1971, trans-

ferring the custody of the children of the parties from the mother-appellant to the father-respondent is set aside and for naught held and this cause is remanded to the trial court for a full and complete judicial hearing upon the father-respondent's motion of January, 6, 1970 to change custody, all in accordance with this opinion.

It is so ordered.

All concur.