**Brenda CONOYER, n/k/a Brenda Servis, Plaintiff-Appellant,**

**v.**

**Larry John CONOYER, Movant-Respondent.**

**No. 49133.**

Missouri Court of Appeals, Eastern District, Division One.

June 18, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 5, 1985.

Darrill Samuel Beebe, St. Charles, for plaintiff-appellant.

Richard Kevin Zerr, St. Charles, for movant-respondent.

KAROHL, Judge.

Appellant Brenda Conoyer, now Servis, former wife of movant-respondent appeals trial court judgment modifying 1981 dissolution decree by transferring primary cus-

tody of the parties' minor child, Dana, born December 25, 1978, from appellant to movant. The issue in this case centers on child custody. Accordingly, we will refer to appellant as mother and movant-respondent as father.

The parties were married in 1978 and that marriage was dissolved in June 1981. The parties settled the issue of custody by agreement and the dissolution court awarded primary custody of Dana to her mother subject to the father's reasonable rights of visitation and temporary custody.

In January 1984 father filed a motion to modify the decree of dissolution to transfer custody of Dana to him and a motion for contempt for interference with his temporary custody and visitation rights under the decree. He alleged that the mother's new husband had exposed the minor child to the use of marijuana; that the child had expressed the wish to live with him; and, that mother had willfully and contumaciously denied him access to the minor child for temporary custody and visitation.

Father had remarried. He and his present wife, Cheryl, were the parents of ten-month old twins at the time of the hearing on the motions on July 19, 1984. He testified that he had an adequate home for his new family and Dana. Their home would accommodate a separate room for Dana. Cheryl testified that they were financially able to care for Dana. She also testified that the mother "refused to give visitation unless we dropped the contempt charge."

Father testified that he had been refused visitation rights "about a dozen" times. He had discussed with a representative of Division of Family Services the problem about Dana "being subjected to marijuana smoking and also the normal care of the child." He testified that in a conversation with mother she "at first stated that [her new husband] only done it around her one time and then she changed her story and said he doesn't do it around her." The reference was to activities of the mother's present husband. The mother testified

that she had a conversation with the father about her husband's use of drugs around Dana. She said that maybe he had done so but "that I didn't know." She recognized the father's complaints and said she had talked to her daughter about the type of cigarette the mother's husband smoked and that her daughter told her it had a brown end. Mother said husband smoked Winston cigarettes.

The mother admitted that she had denied visitation rights but that she did so because Dana would come home from the father's very nervous, upset and at times hysterical. She claimed that the father was poisoning the mind of Dana. She admitted knowing that her actions in stopping visitation was a violation of the court's order. She also gave testimony about an incident in which Dana was left alone in a truck for about an hour which resulted when her present husband was expected but did not arrive to take charge of Dana.

A social service supervisor for the St. Charles County Division of Family Services testified that they had opened a file on a child abuse complaint. The complaint related to the use of marijuana in the child's presence. An investigation was performed and a report made. The report included a reference to statements by the child that mother's present husband smokes skinny cigarettes and blows smoke in her face and blows it in her eyes and nose. She also said that he "traded smoking and cigarettes with a friend of his but the friend does not blow smoke in her face." This testimony was admitted without objection. The report also indicated the mother had considered the complaint ridiculous. The events in the report were denied by her husband. The Division of Family Services closed its case in April 1984.

A detective for the City of St. Peters, Mark V. Schimweg, conducted an investigation with regard to Dana. Over an objection on the ground of hearsay he was permitted to testify from his records with regard to statements made by Dana. The mother's attorney also stated to the court "we are dealing with a four-and-a-half year

old, at that time." The trial court overruled the objections on the ground that there had previously been introduced without objection certain conversations of the child. The trial court's ruling was based upon his view that the objection had been waived.

Detective Schimweg testified that Dana told him her stepfather smoked some substance that "came in a plastic, clear bag ... she called them 'medicine cigarettes' ... [the smoke was blown] in her eyes and face.... She felt like she was floating. He would sprinkle the substance from the bag into a tissue paper, roll it up and lick the edge of it to make it stay together.... She stated they took turns smoking the cigarette, I believe [with] that Rusty subject that she mentioned earlier." Detective Schimweg had contacted the Division of Family Services about his report of the case.

The father also testified that after visitation and temporary custody with him the child would become upset when it was time to return to her real mother's home.

Our review of this court-tried case is governed by Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Appellant first contends that the trial court erred in overruling appellant's objection to Detective Schimweg's testimony concerning Dana's statement to him because the testimony was inadmissible hearsay. The admission of evidence claimed to be hearsay is reversible error only if the complaining party is prejudiced. *Dunn v. St. Louis-San Francisco Ry. Co.*, 621 S.W.2d 245, 252 (Mo. banc 1981). The complaining party cannot be prejudiced by the allegedly inadmissible evidence if the challenged evidence is merely cumulative to other admitted evidence of like tenor. *Id.* In a court-tried case it is practically impossible to predicate reversible error on the erroneous admission of evidence. *In Interest of J.A.J.*, 652 S.W.2d 745, 749 (Mo.App. 1983). Erroneous admission of evidence only requires reversal where there is an absence of sufficient competent evidence to

support the order. *Nunn v. Nunn*, 644 S.W.2d 370, 373 (Mo.App.1982).

In this case, independent evidence was adduced from father, mother, and a representative from the Division of Family Services regarding the use of marijuana by Dana's stepfather in her presence. That evidence was admitted without objection. We find that the trial court had before it sufficient competent evidence, excluding that of Mr. Schimweg and therefore his testimony was not prejudicial to the appellant. Point denied.

Appellant's second contention that the court erred in admitting the same testimony because Dana was only four-and-a-half years old and therefore incompetent is likewise denied because it was cumulative to other admitted evidence of like tenor. *Dunn*, 621 S.W.2d at 252.

Finally, appellant contends that movant father failed to sustain his burden of proof and that the transfer of primary custody from mother to father was therefore erroneous.

The court shall not modify a prior custody decree unless upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, a change has occurred in the circumstances of the child or his custodian and the modification is necessary to serve the best interests of the child. § 452.410 RSMo 1978. *Brand v. Brand*, 534 S.W.2d 628, 632 (Mo.App.1976). The trial court's judgment will not be set aside unless it is against the weight of the evidence or wrongly declares or applies the law. *Korn v. Korn*, 584 S.W.2d 179, 181 (Mo.App.1979). The trial court's decision should not be disturbed unless the best interests of the child require a different disposition. *Id.*

The evidence supported a finding that father had remarried and was able to provide Dana with a suitable and stable home. This alone is not a sufficient basis for modification but is a factor which can be considered. *In Re Marriage of Wolf*, 542 S.W.2d 615, 616 (Mo.App.1976). Here there was evidence that by reason of remarriage Dana was exposed to a stepfather whose actions and conduct created a condition adverse to Dana's best interests. These changes in her circumstances constitute a sufficient basis for a modification. *Randle v. Randle*, 560 S.W.2d 876 (Mo. App.1977). The incident relating to the abandonment of Dana in the truck was at least probative of a lack of communication between the mother and her new husband. Although in itself insufficient it constitutes supporting evidence that the conditions resulting from the mother's remarriage may be hazardous to the minor child.

In addition, movant father has established and mother has acknowledged a denial of visitation and temporary custody rights contrary to the dissolution decree. Although deprivation of a non-custodial parent's visitation rights by the custodian is not conclusive as to warrant a modification, it is a relevant factor to be considered. *R.L.S. v. J.E.S.*, 522 S.W.2d 5, 6 (Mo.App.1975). Further, in matters of child custody deference to a trial court by an appellate court is particularly significant because the welfare of the child is the issue. *In Re Marriage of Scobee*, 667 S.W.2d 467, 470 (Mo.App.1984). The trial court was in a better position to judge not only the credibility of the parties directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. *Id.* at 470.

We also note that mother has not appealed the trial court's judgment finding her in willful contempt of the decree of dissolution. However, the court imposed no penalty for her willful and contumacious acts which were found to have occurred between November 19, 1983 and May 1984.

We find the evidence supports the conclusion of the trial court that the welfare of the child is met by transfer of custody and the grant of reasonable visitation and temporary custody during specified dates and times.

We affirm.

PUDLOWSKI, P.J., and CARL R. GAERTNER, J., concur.