**In re the MARRIAGE OF Michael L. HARRIS, Petitioner-Appellant,**

**and**

**Robin Harris (Hall), Respondent.**

**No. 14816.**

Missouri Court of Appeals, Southern District, Division One.

Aug. 5, 1987.

Dan K. Purdy, Osceola, for petitioner-appellant.

William J. Stewart, Bolivar, for respondent.

GREENE, Presiding Judge.

Michael Harris appeals from the trial court's modification of a decree of dissolution which changed custody of the parties' two minor sons from him to his ex-wife, Robin Harris (now Hall). On appeal, Michael contends there was no substantial evidence of change of circumstances to support the modification order. We agree, and reverse.

Viewed in the light most favorable to support the trial court's judgment, the evidence was as follows. Michael and Robin were married on June 2, 1980. Their first child, Timmy, was born September 5, 1980, and their second, Brandon, was born September 2, 1982. The couple separated November 10, 1983, and, on January 10, 1984, Michael petitioned to dissolve the marriage. Robin filed a cross-petition. Neither party sought custody of the children in their petition. The parties entered into a separation agreement wherein Robin agreed that Michael was a fit and proper person to have care, custody and control of the children, and agreed that she would pay him $40 per month per child as child support. The trial court, after hearing, dissolved the marriage, awarded custody of the children to Michael, and gave Robin reasonable visitation rights. The court did not order Robin to pay child support, as she had agreed to do.

On February 19, 1986, Robin filed a motion to modify the custody provisions of the dissolution decree, alleging there had been a change of circumstances that affected the children's welfare. The motion listed the circumstances as (1) her marriage to Hollis Hall which gave her stability that she did not have at the time of the dissolution of her marriage to Michael, and (2) that Michael had requested that she take actual custody of the boys, which she did, and requested that she see a lawyer "to sign papers" to have custody of the children transferred to her. The motion also requested that, in the event Robin was successful in her attempt to gain custody, that she be awarded a reasonable amount as child support.

Following a hearing on May 9, 1986, the trial court modified the dissolution decree by transferring custody of the children to Robin, granted Michael certain visitation rights, and ordered him to pay Robin the sum of $100 per month per child as child support.

Section 452.410, RSMo 1978, provides that the trial court shall not modify a prior custody decree unless it has jurisdiction under the provisions of § 452.450, and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. A party seeking a post-dissolution change of custody has the burden of showing a substantial change of conditions which necessarily requires a change of custody to serve the best interests of the child. *Cole v. Cole*, 664 S.W.2d 653, 655 (Mo.App.1984). When custody has been once adjudicated, it is presumed that the custodian remains suitable and the burden of proving a change of circumstances as to call for a change of custody is on the party seeking the change. *In re Marriage of Britton*, 574 S.W.2d 475, 476 (Mo.App.1978). Keeping these legal precepts in mind, we examine the evidence in an effort to determine whether Robin proved a substantial change of circumstances that mandated a change of custody.

Robin testified that approximately eight months (April 20, 1985) after the dissolution of her marriage to Michael, she married Hollis Hall. In July of 1985, Michael told her that "since he was single that he thought it would be better for the kids to come live with us since we were married." She said Michael agreed to pay her $200 a month child support, and that he would get a lawyer to "have papers drawn up" to change legal custody of the children. Robin then took the children, and kept them until February 10, 1986. During the time Robin had the children, Michael contributed $600 toward their support.

Michael regained custody of the children in February. Robin said that the reasons Michael gave for not carrying out his promise to have papers prepared to change the legal custody of the children were that if that happened he would be legally obligated to pay child support, and also said "he didn't think I was able to take care of the kids." On cross-examination, Robin testified that on August 17, 1984 (the date of the divorce), she was living with her parents in Humansville, Missouri. A month

later she moved in with a girl friend, Barbara Huvner, who lived between Weaubleau and Humansville. This arrangement lasted two or three months until she moved in with Beverly Sikes, who lived in Bolivar. Robin lived with Beverly five or six months. In March of 1985, Robin moved to Texas where she stayed with Marsha and Lee Adcock for about six weeks, and then moved back to Bolivar, where she resumed living with Beverly Sikes. She then moved to the home of Joyce Barr, where her present husband, Hollis Hall, was also living, and had been since his divorce. Hollis' relationship with Joyce Barr is not explained in the transcript.

Robin testified that after her marriage to Michael was dissolved, and before she married Hollis, she wrote Michael two letters. In the first, postmarked February 25, 1985, she stated, "Mike, I'm so sorry for all of this. I mean look at the kind of mother I've been to our boys" and "Lord, how I wish I wasn't pregnant. Hollis called once since I've been here, the answering machine talked to him though." While she was in Texas, Robin again wrote to Michael, and said, "I decided on an abortion, and I'd like to have a friend to help me get through it." When asked what factors had changed since August of 1984, with respect to the children, Robin replied, "I don't know how to answer that. They were 'tooken' good care of when they were with their dad, they were also 'tooken' good care of when they were with us." When asked in what way the boys would be better off with her, she said, "I'm home. I don't work. I'm with the kids. They want to be with their mother." At the time of the hearing, Robin was working two or three days a week at a service station. Her work history before that time was sporadic. Her present husband, Hollis Hall, did not testify. Three witnesses, one of whom was Hollis Hall's mother, Robin's sister, and one sister of Hollis', testified that Robin was a good housekeeper and a good mother.

In explaining why he relinquished physical custody of the children to Robin in July of 1985, Michael testified, "We just discussed the fact I was single, she wouldn't help me at all. She wouldn't give me no child support, and she was married and had a home. And we just thought that was probably more stable at the time, but it didn't turn out to be that way." He also said, "Well, my parents was watching the kids, my mother, and she was—she was sick and my father had to be hospitalized, and I just couldn't afford a babysitter [sic]. I was working two jobs...." Later, after Robin had the children, Michael told her he didn't want her to have legal custody because, "I thought I could raise them better."

Robin later telephoned Michael and told him, "Well, her and Hollis were having troubles. She called me up and told me she was leaving him, that's why, you know— And neither one of them was working hardly at all.... She said they couldn't afford groceries and stuff, and they was going to try to find jobs in Texas." In early November, Michael picked up the boys and took them to his home. Robin and Hollis went to Texas, but returned to Missouri in late December. The children were returned to Robin so they could spend Christmas with their mother. When Robin refused to let Michael visit the children, he regained custody of them on February 10, with the aid of a court order.

Michael married Mary Ann Harris in November of 1985. She testified that she got along fine with the children, and that the boys related very well to her and their father. While Mary Ann and Michael are at work, her 19 year-old sister stays with the children.

█ The only possible way this court can rule that there was sufficient evidence to uphold the trial court's modification order is for us to find that Michael's action, in relinquishing physical control of the two children to Robin for a period of time in 1985, was a sufficient change in circumstances to justify the change in custody. We are of the opinion that such evidence was insufficient. While there have been cases where voluntary relinquishment of custody has been held to be sufficient to justify a custody change, the facts in those

cases are markedly different than those present here.

For instance, in *Morrison v. Morrison*, 676 S.W.2d 279 (Mo.App.1984), the father was awarded custody of two children, a daughter 12 and a son 10, on August 18, 1981. In November of 1981, the daughter ran away from the father's home, and went to stay with her mother. In July of 1982, the son requested that his mother pick him up at summer camp, and refused to return to his father's home. The father made no attempt to regain physical custody of the children. In August of 1982, the mother filed a motion to modify the dissolution decree, seeking legal custody. At the time of the hearing on the mother's motion, her daughter had been with her for a year and a half, and her son had been living with her for one year. The children, who were ages 16 and 14 at time of hearing, had established themselves in a new school and community, and evidenced a strong desire to stay with their mother, citing their father's physical and mental abusive behavior.

In *Friend v. Jackson*, 714 S.W.2d 953 (Mo.App.1986), the mother received custody of two minor children in a decree dated February 26, 1982. However, by mutual agreement of the parties, the father had actual physical custody of the children for some time prior to the decree, and they remained in his custody until August of 1984, when the mother remarried and sought to enforce her legal custody rights. Neither child expressed a strong preference as to with whom they wished to live. In upholding the trial court's modification order placing the children in the legal custody of the father, this court stated that there is value in children being kept with the parent who has had custody for a long period of time, that the mother had acquiesced in having the children live with their father for over two and one-half years, and, that during that time, the father had demonstrated a long term commitment to the children's welfare.

Unlike the facts in *Morrison* and *Friend*, the evidence here demonstrates that at all times Michael had been a fit and proper custodian of the two children. The brief period of time when Robin had actual custody occurred during the illness of Michael's parents, who were caring for the children while he was at work. Considering Michael's economic circumstances, he had no viable option for child care. Since there was no other evidence even remotely justifying a change of custody, we hold that the short term period Robin had physical custody of the children was not sufficient evidence on which to base a custody change order.

The provisions of the modification order transferring legal custody of Timmy and Brandon from Michael to Robin, and granting her $100 per child per month as child support are reversed, and the cause is remanded to the trial court with directions to set aside its modification decree filed May 15, 1986, and to enter an order denying Robin's motion to modify.

CROW, C.J., concurs.

HOLSTEIN, J., dissents and files dissenting opinion.

HOLSTEIN, Judge, dissenting.

I respectfully dissent. We are bound by the admonition that in court-tried cases, a judgment is to be upheld unless it is against the weight of the evidence, is unsupported by substantial evidence, or erroneously states or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In addition, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(c)(2). In matters of child custody, deference to the trial court by the appellate court is particularly significant because the welfare of a child is at issue and the trial court is in a better position to judge not only the credibility of the parties directly, but also their sincerity, character and other trial intangibles which may not be completely revealed by the record. *Conoyer v. Conoyer*, 695 S.W.2d 480, 483 (Mo.App.1985). The evidence must be considered most favorably to the result reached. *Whiteside v. Whiteside*, 696 S.W.2d 871, 872 (Mo.App.1985).

Viewing the evidence in this light, one could make the following factual findings:

The father of the children had voluntarily surrendered custody of the children to their mother for a period of approximately seven months; prior to the surrender of custody, the mother had been denied reasonable visitation; prior to the surrender of custody, the father had taken two jobs which kept him away from the home and resulted in the children being left with paternal grandparents—both of whom were in poor health; after returning to their mother's home, the children had adjusted well to the new environment; the children's mother had remarried, was no longer working full-time and was thus in a better position to provide the attention and nurture demanded by small children. Finally, the father withdrew an agreement to transfer custody when faced with a potential entry of a judgment for child support.

It may be that none of the above facts standing alone would justify a modification of custody. However, when taken together, I believe a fact-finder could conclude that changes had occurred in the circumstances of the children and custodian, and a modification was necessary to secure the best interests of the children. See *Conoyer v. Conoyer,* supra; *Whiteside v. Whiteside,* supra; and *R.L.S. v. J.E.S.,* 522 S.W.2d 5, 6 (Mo.App.1975). I cannot say that I have a "firm belief" that the judgment of the trial court is wrong.