**Wendy Sue CLARK,**
**Petitioner/Cross–Appellant,**

v.

**Sanford E. CLARK,**
**Respondent/Appellant.**

**Nos. 57314 & 57315.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 29, 1991.

Application to Transfer Denied
April 9, 1991.

Irving L. Cooper, Lisa C. Toarmina, Portman, Edwards, Cooper and Singer, Clayton, for petitioner/cross-appellant.

John B. Loveless, St. Clair, for respondent/appellant.

SIMON, Judge.

In this child custody case, petitioner/cross-appellant, Wendy Sue Clark (mother), and respondent/appellant, Sanford E. Clark (father), each appeal an order by the trial court awarding primary physical custody of their children to each parent in alternating years and joint legal custody. We have consolidated the appeals.

In his appeal, father contends that the trial court erred in: (1) finding mother's remarriage constituted a change in circumstances sufficient to warrant a change in custody under Section 452.410 RSMo 1986; (2) granting the parties joint legal and physical custody where neither party sought such an arrangement; and (3) finding that the best interests of the children would be served by making a change in primary physical custody.

In her cross-appeal, mother contends that the trial court erred in: (1) failing to set aside the modification of the dissolution decree entered January 16, 1987; (2) permitting father to file a supplemental response to interrogatories, listing trial witnesses, nine days before trial and allowing the witnesses to testify; and (3) failing to award primary physical custody of the children to mother. We affirm in part and reverse and remand in part.

On review, we must affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30[1–2] (Mo. banc 1976). When determining the sufficiency of the evidence, we accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo.1989). We accord great deference to the trial court because of its better position to judge the credibility of witnesses. *Conoyer v. Conoyer*, 695 S.W.2d 480, 483[12] (Mo.App.1985). Additionally, we accord the trial court great deference in a child custody case where the welfare of children is the issue. *Id.*

■ The court shall not modify a prior custody decree unless it finds upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree that: (1) a change has occurred in the circumstances of the child or his custodian; and (2) the modification is necessary to serve the best interests of the child. Section 452.410 RSMo 1986. (All references shall be to RSMo 1986 unless otherwise noted.) *Conoyer*, 695 S.W.2d at 483[7].

The record reveals the following. Father and mother were married on June 5, 1977, in St. Clair, Missouri. Two children were born of the marriage: Krista, on October 2, 1980, and Jarid, on May 10, 1982. The marriage was dissolved on May 31, 1985. The court awarded joint legal custody, with mother having primary physical custody and father having temporary physical custody, and ordered father to pay child support in the amount of fifty dollars per week per child. The decree incorporated a separation agreement, signed by mother and father, setting forth custody and visitation rights.

In September of 1986, mother and the two children began living with James J. Morton, Jr. II (Morton) at his home. Morton was married but separated from his wife and was not divorced until November of 1986. Father believed it was immoral for mother and Morton to live together while unmarried and did not think the children should be exposed to such an environment; consequently, he filed a motion to

modify the decree of dissolution, seeking custody of the children.

Mother entered into an agreement with father, providing that: (1) father and mother would have joint legal custody, with father having primary physical custody of the children, subject to mother's temporary custody right; (2) mother would provide the children's clothing; and (3) mother agreed that the children would attend Cornerstone Christian Academy school.

On January 16, 1987, a hearing on father's modification motion was held, lasting twenty minutes. Father testified and was questioned by his attorney, the trial court and mother's attorney. Mother and/or the children did not appear. The trial court issued its decree awarding primary physical custody of the children to father, subject to mother's temporary custody rights which included every other weekend, six weeks in the summer and certain holidays. Mother and father retained joint legal custody, and mother was ordered to provide for the children's clothing needs. The decree incorporated the stipulation.

On April 22, 1988, father filed his second motion to modify, seeking child support in the amount of twenty-five dollars per week per child for education expenses and five hundred dollars per year per child for clothing. Mother answered on May 27, 1988, denying all allegations. Mother also filed a two-count cross-motion, seeking in Count I to set aside the January 16, 1987 modification and in Count II to modify the modified decree and award her physical custody of the children as well as reasonable support payments from father. Mother also directed interrogatories to father. Interrogatories 55 and 56 requested information on witnesses that father expected to call at trial. On February 6, 1989, father responded to the interrogatories and to Interrogatories 55 and 56, in particular, "Not known at this time."

On July 17, 1989, father filed a motion seeking leave to file his reply to mother's motion and amend his motion to modify, asking for legal and physical custody of the children, reasonable support payments from mother, and attorney's fees and costs.

Also, father filed supplemental answers to Interrogatories 55 and 56, identifying his trial witnesses. Mother filed objections to the filing of father's reply, his amended motion, and his supplemental answers to interrogatories, asserting that the reply was untimely, the amended motion injected new issues and no discovery had been taken of the witnesses. Mother also sought leave to amend her pleadings. The trial court denied mother's objections and granted father's motion. The trial court offered to grant mother a continuance for discovery and preparation, but she did not request a continuance. However, she did amend her pleadings.

In her amendment, mother asked that if she were denied physical custody, alternatively she would receive an increase in her temporary custody as follows: 1) one week during Christmas vacation; 2) one week during Easter break; 3) Good Friday; 4) Washington's birthday or alternating Washington's birthdays; 5) the entire summer vacation; 6) the Friday following Thanksgiving Day; and 7) through Sunday evening when mother has the children on a Monday holiday.

On July 27, 1989, a hearing was held on father's second motion to modify and mother's cross-motion. In open court, the trial judge denied Count I of mother's motion seeking to set aside the January 16, 1987 modification decree. Subsequently, on August 7, 1989, the trial court issued its order finding that mother's remarriage constituted a change in circumstances warranting a modification of the modified decree and ordered that the parties maintain joint legal custody and awarded primary physical custody to each parent in alternating years. The trial court set out a schedule for visitation and obligations of the parent without primary physical custody; ordered that neither party would pay child support to the parent with primary physical custody; and ordered mother to continue to provide for the children's clothing needs. Finally, the trial court denied that portion of father's motion requesting attorney's fees and costs on the grounds that he presented no evidence of mother's ability to pay. In its

order the trial court made certain findings, in particular:

5. On the 16th day of January, 1987, (the date of the present decree) the Petitioner was unmarried and living with her now husband James Morton, Jr., who was still married to another woman. She would have the Court believe that she was forced to execute the "Stipulation" by fear of loosing [sic] her children altogether. She was however, represented, at the time, by a very competent attorney who advised her based on his knowledge of the local judiciary. His advice was very likely correct. This Court would surely have frowned on her then "live-in" status. Thus if she had the fear she expressed, it was well informed. Now, she is married to this man and they have a child who is now about 2 years old. Therefore, whatsoever intolerance the Court may have had with the "live-in" status has now been eliminated. This is a significant change in circumstances.

6. This is a case where both parents are obviously very loving, caring and good parents. They both have something special to offer their children, Jarid and Krista. They differ on what the children should have and which parent should give it. The Petitioner and her husband obviously can offer substantially more financially. The Respondent has more concern for character, happiness, commitment and family. This is commendable, as the quality of a person's life is not measured by the total of his possessions or assets.

7. The children are happy, bright children. They need as much love and affection from both parents as they can possibly get. Under the present circumstances, they are receiving as much love and affection as they can get. It is hard for this Court to find a solution to the situation.

8. Neither party has convinced this court one parent should have primary physical custody to the exclusion of the other.

The children have resided with father for more than three years. Father works as a driver for United Postal Service where he has been employed for sixteen years. His annual income is approximately $40,000. Father has one daughter by a previous marriage who is twenty-one years old and resides in New York. Father has lived in several houses since the modification decree. He currently lives in his own home on Highway PP in St. Clair, Missouri. The house has three bedrooms, two bathrooms and a partial basement. Father's house is in need of repairs, and he has started fixing it.

Father cooks meals for the children and launders their clothes. When father goes to work he takes the children to his sister's house, about three houses down from his home. Their aunt takes them to Cornerstone Christian Academy where she is a teacher. The school has asbestos which has not been removed or scheduled for removal. The teachers are not required to have a college degree. The school has no program for gifted children or sports programs. After school the children go to their aunt's until father gets home at about six p.m. They have been supervised at times by their aunt's son who is twelve years old.

Mother teaches at a high school in Arnold, Missouri, although she testified she would stay home with the children if she were granted physical custody. Mother earns about $23,000 per year. Mother has worked on a temporary basis at a guttering company partly owned by Morton. Mother married Morton on April 11, 1987, and lives with him in his home. On January 16, 1988, mother and Morton had a child. The Morton home has three bedrooms, three bathrooms and a children's play area in the basement. Krista shares a bedroom with the baby when the children stay with her. The children would attend schools in the Rockwood district if mother were granted custody. The teachers at these schools have college degrees. The schools have asbestos problems but have been scheduled for removal of the asbestos. A new school in the district in which mother resides is scheduled for completion in late 1989 and will have no asbestos. Morton earns about

$92,000 per year and pays the mortgage on the Morton home. Mother's name is not on the title.

■ In his first point, father contends that the trial court erred in finding mother has met the statutory requirements under Section 452.410, in that mother does not have physical custody and therefore is not a custodial parent, and mother's remarriage does not constitute a change in circumstances. Mother argues that: (1) she is a custodian within the purview of Section 452.410; (2) her remarriage; the increased age of the children; father's interference with mother's visitation rights; lack of adult supervision after school until father arrives home; and the children's attendance at a school which has asbestos problems and offers a limited educational experience for the children constitute the required statutory change in circumstances which warrants a change in custody; and (3) such a change is in the best interests of the children because she can offer the children superior education, home life and parenting.

The term "custodian" is not defined in Chapter 452. Section 452.375, which was enacted after Section 452.410, provides in pertinent part:

(1) "Joint legal custody" means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority;

(2) "Joint physical custody" means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents.

In *Blankenship v. Blankenship*, 699 S.W.2d 44 (Mo.App.1985), our court reviewed an appeal of a temporary custody modification. Although we determined there that the action was more properly for modification of visitation rights and thus not covered by 452.410, we indicated that changes in temporary custody were covered by the section. *Id.* at 45[1]. *See also, Blankenship*, 699 S.W.2d at 45 (dissenting opinion). Here, mother had joint legal custody and temporary physical custody. Thus, we conclude she is a custodian under Section 452.410.

■ Father relies on *Betterton v. Betterton*, 752 S.W.2d 417[2] (Mo.App.1988) for the principle that remarriage alone of a noncustodial parent is insufficient to support a finding of changed circumstances. Here, the trial court based its decision that a change in circumstances had occurred on the fact that mother had remarried and ended the "live-in" arrangement, which she alleged prompted her to agree to the stipulation of custody. Mother asserts that in addition to her remarriage that since January 16, 1987, until trial on July 27, 1989: 1) father has interfered with mother's temporary custody four or five times, although mother had additional times arranged between father and Morton; the interference was generally because father planned special activities with Jarid and then "Jarid would not want to come ..." with mother; 2) the children were supervised after school at times by a twelve-year-old until father arrived home; 3) the children were unkempt about fifty percent of the time when mother picked them up; 4) the children attended a school with asbestos problems and a limited educational experience; and 5) the children are older. Deferring to the trial court's advantage in assessing credibility, we agree that a change of circumstances has occurred. Thus, father's first point is not meritorious.

Next we shall address father's third point, wherein he contends the trial court erred in finding that a change in primary physical custody would serve the best interests of the children. The second prong of Section 452.410 mandates that the court shall not modify a custody decree unless the modification is necessary to serve the best interests of the children. Only where the change in circumstances rises to such a

level that the welfare of the children requires it, should custody be granted. *Klaus v. Klaus,* 509 S.W.2d 479, 481[5] (Mo.App.1974). Mother asserts that the changes in her circumstances warrant a change in custody. The burden of establishing the existence of facts warranting a transfer of custody is on the party seeking such change. *Klaus,* 509 S.W.2d at 481[6]. Thus, mother bears the burden of showing that because of the alleged changes in circumstances, the welfare of the children necessitates a transfer of primary physical custody to her.

■ Mother asserts her remarriage has improved her ability to provide for the children financially and the type of home environment she can offer the children. Mother also claims her remarriage will offer a traditional family unit and that she would quit working to stay home with the children if granted physical custody. Were we dealing with an original custody decree following a divorce, where the children were to be placed with one parent or the other, the "better" home would be a relevant consideration. *Klaus, supra,* at 481[3]. Where custody has once been placed, however, the "better" home question has little significance. *Id.* Mere changed conditions, standing alone, do not justify a change in custody unless it is further shown that such change is in the interest of the welfare of the children. *Meinking v. Meinking,* 529 S.W.2d 440, 444[5] (Mo.App. 1975). The home environment mother would offer the children is pertinent only in determining whether that home constitutes an acceptable repository for the children and not as evidence supporting any need for change. *Klaus, supra,* at 481[5].

We turn then to the other changes in circumstances cited by mother as reasons for a modification in physical custody. In its findings of fact Numbers 6 and 7, the trial court found that both parents were "very loving, caring and good parents", that the children "are happy, bright children" and "[u]nder the present circumstances, they are receiving as much love and affection as they can get." In its finding Number 8, the trial court expressed its difficulty in finding a solution in this case and determined that "[n]either parent has convinced this court one parent should have primary custody to the exclusion of the other."

■ Based on our review of the record, we find that the trial court's findings are supported by substantial evidence. However, the issue remains whether the findings are sufficient to trigger a change in custody. *Betterton v. Betterton,* 752 S.W.2d 417, 420[2] (Mo.App.1988). Moreover, there is value in keeping children with the parent who has custody, as against uprooting them and transplanting them to a new home. *Schmidt v. Schmidt,* 591 S.W.2d 260, 262[2] (Mo.App.1979). Children should not be moved from one environment to another upon slight changes in the status of the parents. *Klaus, supra,* at 481[4–5]. It is only where the changes are such that the welfare of the children requires it that custody should be transferred. *Id.* The children were in father's physical custody for over three years and the trial court found them to be happy and receiving as much love and affection as they could get. The changes in mother's circumstances found by the trial court do not lead to the conclusion the welfare of the children necessitates a change in physical custody. The trial court erroneously applied the law as applicable to its findings. Therefore, we reverse that portion of the decree ordering the alternating physical custody of the children. The record indicates that the parties disagree as to the education of the children. Joint legal custody, which was in effect prior to this proceeding, was not modified. In light of the record, on remand the trial court should re-examine that problem of legal custody. Based on our disposition of father's first and third points, it is not necessary to reach father's second point wherein he asserts the trial court erred in granting the parties joint legal and physical custody where neither party sought such an agreement.

■ In her cross-appeal, mother claims the trial court erred in failing to set aside the modification decree of January 16,

1987, in that: 1) she received no notice of the hearing; and 2) the hearing was insufficient. Under Missouri Rule 43.01(b), when a party is represented by an attorney, the service "shall be made upon the attorney unless service upon the party himself is ordered by the Court." The record indicates that notice of the hearing was sent to mother's attorney of record on December 17, 1986, and her attorney appeared and participated in the hearing. Thus, we conclude that mother received notice of the hearing.

■ Mother also contends the hearing was inadequate because: (1) its duration was insufficient; and (2) neither she nor the children testified. Mother relies on *Flickinger v. Flickinger*, 494 S.W.2d 388 (Mo.App.1973) which states that "proceedings for a change of custody order are not and never should be cursory or perfunctory, and the court should not only jealously protect the interests of the child, but also afford the parents an opportunity to be heard and accord them due process." *Id.* at 391[2]. Mother also cites *Flickinger* for the principle that a child custody decree requires a full hearing. In *Flickinger*, we interpreted the requirement of a full hearing to mean an "open, adversarial hearing without prejudgment". *Id.*, citing *Rawlings v. Taylor*, 477 S.W.2d 737 (Mo.App. 1972).

*Flickinger* involved a decree based entirely on a juvenile officer's report and did not afford the opposing party either notice or an opportunity to be heard. We find this distinction persuasive. Here, mother had notice and the January 16, 1987 hearing was an open, adversarial hearing without prejudgment. Mother certainly had an opportunity to testify. Her attorney appeared on her behalf and questioned father. Mother's first point is not meritorious.

In her second point, mother claims the trial court erred in permitting father to file a supplemental list of trial witnesses nine days before trial over her objection. She further contends the trial court abused its discretion in allowing the witnesses to testify over her objection.

■ Initially, mother argues that she suffered prejudice because she did not have time to depose the witnesses in that: 1) the witnesses corroborated father's testimony; and 2) she did not have time to locate witnesses to contradict their testimony. Under Missouri Rule 56.01(e), a party:

> is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters ...

An action is "seasonable" if it is "... taken within the time agreed or if no time is agreed within a reasonable time." Black's Law Dictionary 1212 (rev. 5th Ed.1979); see also, *State ex rel. Highway & Tr. C. v. Pully*, 737 S.W.2d 241, 244[2] (Mo.App. 1987). Whether an action is taken within a reasonable time is determined on a case-by-case basis. *State ex rel. Highway & Tr. C.*, 737 S.W.2d at 245[3]. Here, the trial court stated it would grant mother a continuance to respond and prepare for any new issues and to depose the witnesses. In response, mother's attorney only requested that the judge permit him to depose witnesses before he cross-examined them, upon his request. The trial judge agreed. The record indicates that mother did not request a continuance and apparently did not depose the witnesses. Thus, we conclude mother was not prejudiced by the filing of a supplemental list of father's witnesses.

A trial court has broad discretion to permit or deny examination of a witness whose name has not been disclosed by answers to interrogatories. *In re Marriage of W.E.F. v. C.J.F.*, 793 S.W.2d 446, 448 (E.D.Mo.App.1990). On appeal, we determine whether the trial court has abused its discretion in permitting father's witnesses to testify. Mother cites *Critcher v. Rudy Fick, Inc.*, 315 S.W.2d 421, 429 (Mo.1958), for the proposition that the trial judge has a *duty* to prevent one party from misleading or prejudicing another party through answers they gave to interrogatories. The case in fact states that "the trial court should be given *wide discretion* to prevent the party propounding the interrogatories

from being misled or prejudiced ..."
*Critcher*, at 429[11]. (Emphasis ours.)
Here, the trial court stated it would grant
mother a continuance to depose the wit-
nesses and prepare for trial. Despite the
court's offer, mother did not request a con-
tinuance or depose the witnesses. Thus,
we cannot say the trial court abused its
discretion in permitting father's witnesses
to testify.

In her third point, mother claims the trial
court erred in failing to award primary
physical custody of the children to her on a
permanent and continuous basis as opposed
to an alternating yearly exchange basis.
As discussed earlier, the change in moth-
er's circumstances do not necessitate a
modification of the physical custody of the
children. Thus, mother's point is not meri-
torious.

In the alternative, mother seeks to en-
large her temporary custody, asking the
court to allow her to have the children all
summer, Christmas vacation week, spring
break week, and alternating on the other
holidays. Mother has met the threshold
requirement of a change in circumstances.
We remand for the trial court's considera-
tion of mother's alternate request.

Concluding, we affirm the trial court's
denial of Count I of mother's motion seek-
ing to set aside the January 16, 1987 modi-
fication decree. We reverse and remand
the trial court's award of alternating physi-
cal custody and of joint legal custody and
remand for the trial court to conduct such
hearings as it deems necessary to re-exam-
ine the propriety of increasing mother's
temporary custody and modification, if any,
of legal custody.

CRIST, J., and BRADY, Senior Judge
concur.