Susan Gay WILSON,
Petitioner/Appellant,

v.

Craig Allen WILSON,
Respondent/Respondent.

No. 64401.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 12, 1994.

**668**

Malcolm H. Montgomery, Downs, Johnson & Montgomery, Cape Girardeau, for petitioner, appellant.

Craig M. Billmeyer, Patrick S. Butler, Finch, Bradshaw, Strom & Steele, L.C., Cape Girardeau, for respondent, respondent.

REINHARD, Judge.

Mother appeals an order of the circuit court granting father's motion to modify the decree of dissolution and denying her cross-motion to modify. We affirm in part and reverse in part.

The parties' marriage was dissolved in November 1988. They entered into a separation agreement and "Joint Custody Plan", both of which were made a part of the decree of dissolution. The agreements and court order granted mother primary physical custody of their son, Zachary.[1] Father was ordered to pay child support and given visitation rights. The agreements further provided that mother could not move her permanent residence farther than 135 miles from Cape Girardeau without first obtaining written consent from father or prior court approval.

Four months prior to the dissolution decree, father started dating his present wife. They began living together shortly after the dissolution occurred, and were married in May 1991. They live in a new three bedroom home. Father and his present wife had a joint annual income of approximately $60,000 in 1992.

In the five years since the dissolution, mother has resided at four different locations in Cape Girardeau. The most recent residence is a two bedroom apartment, where Zachary shared a bedroom with his half-sister.

Mother began dating Phil Schmidt in the fall of 1989. They were briefly engaged and lived together for a period of time.[2] The only evidence of domestic turbulence involving Zachary was an incident subsequent to the end of the relationship, when Schmidt returned and was extremely abusive of mother in front of Zachary. Mother called the police who, upon arrival, found a frightened Zachary hiding in a closet.

At the time of the dissolution, mother was a head teller at a bank in Cape Girardeau, earning slightly less than $17,000 annually. In July 1992, she was forced to resign following a disagreement with her supervisor over personnel policy. She has not applied for available teller positions, indicating the pay was insufficient. At the time of the hearing she was receiving unemployment compensation.

Occasionally, mother took trips, leaving Zachary overnight in the care of various

---

1. Mother also has custody of a fifteen year old daughter from an earlier marriage.

2. Although both parties were living with persons to whom they were not married, the provisions of the joint custody arrangement were followed and neither party apparently complained about the living arrangement of the other.

people including her best friend and, prior to the abuse incident, Schmidt. This has occurred at least seven times.

Father complained that mother should have left Zachary with him on those occasions when she was away overnight. We note, however, he was unavailable on some of the occasions. He also alleged that his requests for additional visitation time were denied. Mother disputed that assertion.

Mother started dating her current boyfriend, Joseph Micek, (who she had met in 1975), in November 1992. Both thought it might lead to marriage. Micek, a resident of Rhode Island, has visited her in Missouri at least ten times. He is gainfully employed by United Airlines, but is unable to obtain a transfer to Missouri. He owned a home and rental property in Rhode Island. Mother wanted to move to Rhode Island with her two children. She had been offered a job there, but since she had no authority for the removal she turned the job down. She hoped that she would get the court's permission to move there, get employed and further her relationship with her boyfriend.

There was evidence that Zachary had a close relationship with father, mother and his half-sister. Each party corroborated the other's affection for Zachary.

On October 22, 1992, father filed a motion to modify the decree of dissolution asking that the joint custody plan be continued, but that *he* be granted primary physical custody. He alleged changed circumstances including: (1) his remarriage and ability to provide a stable home; (2) his continued employment at Proctor and Gamble and steady income sufficient to provide for the needs of Zachary; (3) mother's continuing unemployment; (4) mother's history of failed relationships, including two failed marriages and a broken engagement, which were indicative of an unstable lifestyle; (5) Zachary's increased desire to spend more time with father; and (6) father's desire to spend more time with Zachary.

Mother filed an answer and cross-motion to modify child support. She admitted changed circumstances, and asked for increased child support. Her allegations of changed circumstances included the increased cost of supporting Zachary and herself. In addition to requesting increased child support, she requested permission to remove Zachary to Rhode Island, where, she contends, there are better prospects for employment. She also noted that, in addition to Micek, her two brothers lived in Rhode Island.

After a hearing, the court denied mother's motion to remove Zachary to Rhode Island, and found that there were substantial and continuing changes "compelling modification which are in the best interests of the child."

The court noted that: (1) Zachary was very close to both father and mother; (2) father had displayed interest in Zachary and his activities; (3) father was gainfully employed, while mother was unemployed as a result of her unwillingness to accept available employment; (4) she had become unemployed because she refused to comply with the reasonable instructions of her supervisor; (5) father had a stable home and marriage; and (6) Zachary had developed a close relationship with father's extended family.

The court also noted mother's romantic relationship with Micek, commenting that while he is caring, intelligent, law abiding and mindful of the needs of Zachary, the relationship has led mother to spend time away from the child. Moreover, the court reasoned mother's relationship with Micek will: (1) necessarily lead mother to move to Rhode Island; (2) continue to divide her time and attention between Micek and her son; or (3) end without providing the stable home Zachary needs. The court granted legal and primary physical custody to father. The order required mother to pay child support and granted her visitation rights.

■ On appeal, mother contends the court erred in denying her request to remove Zachary to Rhode Island. The decision of the trial court will be affirmed unless: (1) it is unsupported by substantial evidence; (2) it is against the weight of the evidence; or (3) it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In today's mobile society, the decision to permit a parent to remove a child from the

**670**

jurisdiction of the court is a difficult one. Removal of a minor child from a jurisdiction is proper where the best interests of the child will be served. *Simpher v. Simpher*, 770 S.W.2d 488, 489 (Mo.App.1989). "[I]nterference with the noncustodial parent's visitation privilege is not an insuperable obstacle when removal of the minor [child] to another state is at issue." *Id. Koenig v. Koenig*, 782 S.W.2d 86 (Mo.App.1989), involved a situation similar to the instant case. There, the mother had married a man in New Hampshire. We held that the following factors found by the court in denying permission to remove the child to New Hampshire were supported by evidence and were sufficient to support the court's judgment: (1) the brief acquaintanceship between the mother and her new husband; (2) the lack of discussion between them as to where the child would reside after the marriage; (3) the scarcity of testimony about the living arrangements in New Hampshire; and (4) the lack of testimony regarding the nature of the child's relationship with the new husband and his family.

In the instant case, as the court ordered a change in custody, it did not address specifically or make any findings on the removal issue. However, the evidence supports a denial of mother's motion. Mother provided no plan for living arrangements which would provide a stable environment for Zachary in Rhode Island. That alone is sufficient to support the denial of mother's request to remove Zachary to Rhode Island.

However, the evidence does *not* support a change of primary custody in favor of father. In child custody matters, the trial court's determination must be given greater deference than in other cases. *Aston v. Aston*, 810 S.W.2d 720, 721 (Mo.App.1991). However, in change of custody cases, the movant must show a change in circumstances of the child or the *custodial* parent which is significant and directly affects the welfare of the child. § 452.410, RSMo Supp.1993; *Clark v. Clark*, 805 S.W.2d 290, 291 (Mo.App. 1991). Once custody has been originally adjudicated, a presumption arises that the custodial parent remains suitable. *Burden v. Burden*, 811 S.W.2d 818, 820 (Mo.App.1991). The burden of showing circumstances which warrant a change of custody is on the moving party. *Id.*

In their pleadings, both parties alleged substantial and continuing changes of circumstances since the granting of the dissolution decree. The evidence supports a finding of substantial and continuing changes. Thus, the trial court did not err in finding changed circumstances. However, such findings must be sufficient to trigger a change in custody. *Betterton v. Betterton*, 752 S.W.2d 417, 420 (Mo.App.1988). There is value in allowing children to remain with the parent who has custody, as opposed to uprooting them and transporting them to a new home. *Id.* at 419. Children should not be moved from one environment to another upon slight changes in status of the parents. *Clark*, 805 S.W.2d at 295. We will only do so where the changes are such that the welfare of the child requires that custody should be transferred. *Id.*

There was little evidence to support a conclusion that mother's relationship with her boyfriend had adversely affected the child. Zachary was doing well in school and enjoyed a loving relationship with both parents. Further, the court failed to address whether the separation of Zachary from his half-sister was in his best interest. Moreover, neither parent requested that the joint custody plan be abdicated. In fact, father testified that joint custody had been beneficial to Zachary.

Neither the trial court's findings nor the evidence supports the conclusion that the welfare of the child necessitates a change of physical custody.

Therefore, the denial of permission to remove Zachary to Rhode Island is affirmed. That portion of the order affecting custody of the child is reversed. The custody order as made in the dissolution decree shall remain in effect.

Judgment affirmed in part and reversed in part.

CRIST, P.J., and AHRENS, J., concur.